## Baily's Estate

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*William I. Stanton,* for exceptants.

*Raspin, Espenshade & Heins,* contra.

KLEIN, J., January 5, 1945. — Testator left the residue of his estate in trust "to pay from the income or principal thereof the sum of Twenty-five Dollars ($25) per month unto my brother, Maurice V. Baily, and the sum of Fifty Dollars ($50) per month unto my brother, Jesse W. Baily; said payments to begin as

of the day following my death and to continue monthly until the entire principal and income of my estate shall be exhausted; Provided, however, that should either of my said brothers die before the exhaustion of my estate by such payments, then the entire balance shall be utilized for the monthly payments herein provided, for my surviving brother; and should both my said brothers die prior to the exhaustion of my estate, then I give, devise and bequeath any remaining portion of my estate unto St. Joseph's Roman Catholic Church, located on Willings Alley near Fourth Street, Philadelphia, Pennsylvania, absolutely".

Maurice V. Baily predeceased the testator and Jesse W. Baily, the surviving brother, claimed at the audit that he was entitled to receive $75 per month. The charity remainderman contended, on the other hand, that he was entitled only to $50 per month. The auditing judge decided in favor of the surviving brother, and we agree with this conclusion.

It is clear from the outset that testator's two brothers were the primary objects of his bounty and that this trust was created for the express purpose of furnishing them with modest incomes after his death. It is also clear that he desired the entire principal of the fund to be used for this purpose and that the gift over to the charity was merely incidental in the event of the death of his brothers prior to the exhaustion of the fund.

The first sentence of the portion of the will which has been quoted above makes provision for a continuous income of $50 per month to testator's brother, Jesse W. Baily, until the principal of the estate is exhausted. Testator then goes on to say:

"Provided, however, that should either of my said brothers die before the exhaustion of my estate by such payments, then the entire balance shall be utilized for the *monthly payments* herein provided, for my surviving brother . . ." (Italics supplied.)

In order to sustain the contention of the charity, we must hold that this language is surplusage and disregard it as meaningless. This we cannot do, as we must, if possible, give effect to all of the language used by testator: Hannach's Estate, 332 Pa. 145 (1938); Moyer's Estate, 280 Pa. 131 (1924).

The fact that the testator used the plural in referring to the monthly payments must also not be overlooked. This language could, of course, be construed broadly as referring to the aggregate payments paid to both brothers, but it could also properly be restricted to refer to the two payments which the two brothers were to receive each month. Had the testator intended that the payments to the deceased brother were not to be paid to the surviving brother, he could have properly used the singular and said "monthly payment".

Furthermore, if we examine the fourth paragraph of the will, in which the testator appoints his brother Jesse executor and trustee, we find the following language:

"I direct . . . that he receive no compensation for his services as executor and trustee other than the *devises and bequests* hereinbefore provided." (Italics supplied.)

If the construction urged by the charity is adopted and the gift to Jesse is restricted to $50 per month, then the will contains but a single bequest in his favor and the use of the plural by the testator would have been erroneous. On the other hand, if we adopt the conclusions of the auditing judge, we give effect to the language actually used by the testator, because the surviving brother becomes the beneficiary of two gifts instead of one.

It must be conceded that the language used by the testator is ambiguous and susceptible of more than one interpretation. Under these circumstances, every intendment favors the heirs and next of kin and due con-

sideration must be given to the fact that testator plainly regarded his brothers, and not the charity remainderman, as the primary objects of his bounty: Wood's Estate, 321 Pa. 164 (1936) ; Dobbin's Estate, 148 Pa. Superior Ct. 177 (1942).

Admittedly, under the ordinary rule of English syntax, an adjective or a prepositional clause modifies the nearest noun rather than a remote one. This rule cannot be used, however, to override the testator's manifest intention: Shipley's Estate (No. 2), 337 Pa. 580 (1940). If necessary, the court may transpose a word, a phrase, or even a whole sentence, in order to effectuate the testamentary purpose. The order in which words are placed is immaterial if a different arrangement will best answer the testator's apparent intent. See II Hunter's Pennsylvania Orphans' Court Commonplace Book 1427, sec. 2(k). In our opinion, we can best give effect to testator's intention by transposing the phrase "for my surviving brother" to make the sentence under discussion read: "Then the entire estate shall be utilized *for my surviving brother* for the monthly payments herein provided."

We therefore conclude that Jesse W. Baily, the surviving brother, is entitled to the monthly payment of $25 which the deceased brother, Maurice, would have received had he also survived, in addition to the monthly payment of $50 which is admittedly payable to him.

The exceptions are dismissed and the adjudication is confirmed absolutely.

### Dissenting opinion

BOLGER, J., dissenting.—The majority's chief difficulty lies in the casual attention it gives to the gift in remainder to St. Joseph's Church. It states that this legacy is incidental to the gifts to testator's brothers. To the contrary, I regard it as vital to the testator's testamentary purpose, not so much as it benefits the church, but in that it serves as a key to or a limitation

upon the extent of the interests given to the brothers. Were there no such gift in remainder, Jesse, the survivor, could now claim and would be entitled to be awarded all of the estate absolutely: Thompson Trust, 348 Pa. 228; Roberts et al. v. Hensel et al., 342 Pa. 314. This failure to comprehend the testamentary scheme of the will necessarily results in a distortion in any attempted interpretation of the testator's will.

While I agree that the "testator desired the entire principal used for the purpose of supplying his brothers with modest incomes after his death", I fail to see how this leads to the conclusion that Jesse's share must now be increased by that of his deceased brother. Two important factors are that this will was drawn by an experienced lawyer and that the testamentary scheme is clearly visible. The first of these logically indicates that if testator had wanted the surviving brother's share enhanced by that of the one dying first the will would have so stated clearly and unmistakably; that in the absence of such language and in view of the clear language used, especially the term "monthly payments herein provided", it should be held that the amount of the periodic benefactions to a survivor remains constant throughout the operation of the will.

Testator knew the ages, state in life, habits, and needs of his brothers as well as the extent to which he wanted to benefit them, in accordance with the extent of his substance. It was clear that the amount of his fortune would not yield in income the amounts he wanted to give them. He, therefore, resorted to the device of parcelling out principal in modest sums, in addition to income, so that his estate would last as long as possible even to the death of the survivor. He fixed the amount of the gifts in his will giving more to one brother than to the other for reasons he knew best—whether he preferred one to the other or that the needs of one were the greater are both possibilities. Here was

where the skilled hand of the scrivener appears. The monthly sums were designated and to secure their fixation he inserted, as above stated, the gift in remainder to the church. It is to be observed that these sums are not subject to fluctuation—for instance, there is no provision for emergency of any kind or character even for illness or interment of a brother. Therefore, I am of opinion that the majority unjustifiably intrudes itself into this complete and self-contained testamentary scheme, by substituting a new condition for one that the testator had already specifically employed. Furthermore, in augmenting the monthly payments to Jesse to more than the amount fixed in the will, the "modest income" referred to gives to Jesse the dubious benefit of probably having the fund exhausted before his death, an eventuality which the testator desired to avoid.

The clause in dispute provides that, "should either of my said brothers die before the exhaustion of my estate by such payments, then the entire balance shall be utilized for the monthly payments herein provided for my surviving brother." It is a mystery to me why the majority opinion holds that this clause must be disregarded in order to sustain the church's contention. It is patent, on the other hand, that the testator here is merely oversimplifying when he provides for the continuation of the gift to the survivor of the "monthly payments herein provided" for him. Such oversimplification is frequently found in trusts, mainly in provisions for succeeding life estates wherein the trust is directed to continue after the death of one life tenant for the benefit of the succeeding one. It is also found in provisions for the "payment of just debts and funeral expenses". Whereas understatement ordinarily is a serious pitfall for the scrivener, we rarely find overstatement resulting in such fatal consequences as the majority impart to it. I refuse to subscribe to such conclusion.

The gravamen of this phrase is contained more in the words "herein provided", which offer no ambiguity and the presence of which the majority opinion conveniently ignores, than in the two immediately preceding words "monthly payments", upon a construction of which the majority opinion relies and which concededly may be given either of two interpretations. "Herein provided" means that if Jesse survives Maurice he is to receive the share hereinbefore provided, for nowhere else in the will is there any such provision made. The sum so provided is $50 a month—not the increased amount read into the will by the majority opinion. It is only by this gratuitous but erroneous action of the court that this result can obtain. In Conner's Estate, 346 Pa. 271, our Supreme Court, speaking through Mr. Justice Parker, said (syllabus) :

". . . it is not the province of the court to consider what the testator possibly intended but only what intention is expressed in the language used."

In Doerr's Estate, 47 D. & C. 587, Judge Ladner said (p. 589) :

"If this court could speculate as to what the testator had in mind but failed to express properly, we would say that the word 'after' was used by mistake for the word 'before'. . . .

"But the testator did not use the word 'before', and the real question is whether we may substitute a word he did not use for the word he did use. We cannot take such liberties with the testator's language for that would not be interpreting, but rewriting a will. We might guess as to the testator's intent but no matter which way we conclude we would do violence to the language actually used and this we are not permitted to do, since the question in expounding a will is not what the testator meant but what is the meaning of his words: Ludwick's Estate, supra. Or, as put in Nebinger's Estate, 185 Pa. 399, the question is confined to

the meaning of what the testator has said, and does not extend to the consideration of what he might have said but did not."

Another defect is the interpretation given the phrase "monthly payments". While subject to a dual interpretation, I believe it more properly means the several regular monthly payments to either brother—as 12 payments per year—rather than that the survivor, upon the death of one, should receive what theretofore had been both monthly payments.

The employment of the fourth paragraph of the will adds no weight to the majority opinion. The phrase "devises and bequests" contained therein is presumed to mean that the testator intended thereby to give two gifts to Jesse, one before his death and one after his death. The fallacy of such reasoning is that it presupposes a fact that nowhere appears, viz, that the testator knew that Jesse would survive Maurice, when as a fact both were alive when the will was written.

The transposition of phrases is unwarranted. Words in a will can be transposed in order to clarify the intent of the testator only when such intent cannot otherwise be found: Conner's Estate, supra. The construction herein is apparent and therefore readily found.

For these reasons I would sustain the exceptions.