## Hiller Estate

*Rowland C. Evans, Jr.*, for accountants.

*William E. Schubert, Jr.*, guardian and trustee ad litem, p.p.

KLEIN, P. J., April 6, 1964.—Blanche H. Hiller died on December 8, 1944, leaving a will by which, inter alia, she devised and bequeathed one-half of her residuary estate to Virginia H. Harris and Rowland C. Evans, Jr., the present accountants, in trust to pay the net income therefrom to the said Virginia H. Harris, for life, and after her death to pay such of the income, not exceeding one quarter thereof as she might by will appoint, to her husband, for such period as she might designate, and to pay the balance of the income, and the entire income if the said power should not be exercised, or the estate created thereunder should cease, to the descendants of the said Virginia H. Harris, until the termination of the trust, and in default of descendants, then to testatrix's descendants, per stirpes, until the termination of the trust. Testatrix further directed that the trust should terminate upon the death of the

survivor of William B. Harris and all of her descendants living at the time of her death, when the principal should be paid over to the descendants of Virginia H. Harris then living, equally, per stirpes, and in default of such descendants, then to testatrix's descendants then living, equally, per stirpes.

By article Seven, paragraph 12, testatrix provided as follows: "To expend out of the share of principal from which any beneficiary may be entitled to income such sums as they, in their sole discretion, may consider proper for the education, comfort, maintenance and support of such beneficiary during illness or emergency of any kind." By article Nine testatrix provided, further, as follows: "I hereby expressly release and exonerate RICHARD K. STEVENS and ROWLAND C. EVANS, JR. of and from all liability for acts of omission or commission that they may make upon the request of my daughters as Co-Executors and Co-Trustees." A copy of the will, certified by counsel to be a true and correct copy, is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of Saylor, J., dated May 20, 1958, and the present account is stated to have been filed as an interim account, no account having been filed for over five years.

Virginia H. Harris, cestui que trust for life is still living and the trust continues.

The names and interests of the parties in interest appear to be fully set forth in the statement of proposed distribution and need not be recapitulated in this adjudication. By decree of this court dated May 1, 1963, William E. Schubert, Jr., Esq., was appointed guardian ad litem for minors and trustee ad litem for unborn and unascertained interests.

Credits are taken in the distribution account, aggregating $14,209.52, according to Mr. Schubert's report, which is annexed hereto, for payments made at the

written request of Virginia H. Harris, life tenant, and stated to have been devoted to the rehabilitation of a three-story and basement beach-front apartment house, located at 1209 Boardwalk, Ocean City, Maryland, for the repair and improvement of said property after the unprecedented storms and floodings along the northeastern coast of the United States in March of 1962. The said loss, being clearly attributed to water damage, was not covered by insurance. The total cost of repairing and improving the said building is stated to have been over $30,000, slightly more than half of which was paid by the life tenant's husband, and the balance of which, representing the items totalling $14,209.52, referred to above, was advanced to the life tenant on account of distribution of principal, in reliance upon the above quoted provisions of the will.

Mr. Schubert, the guardian and trustee ad litem, does not question the amount of these expenditures, nor does he request a surcharge therefor. He contends, however, that they represent excessive and unwarranted invasions of principal in behalf of the life tenant, which the trustees should recoup from income payable to the life tenant, unless such payments are specifically recognized by the court "as extraordinary payments made in the light of an emergency" and are specifically approved by the court.

Mr. Evans, one of the trustees, the other trustee being the life tenant herself, regarded the expenditure as a justifiable "emergency" under the provisions of the will, and indicated in his statement at the audit that he believed that he "had the right to turn over all of the principle to the life tenant if she had so requested in writing."

The auditing judge does not agree with Mr. Evans' suggestion that he would have the right to turn over all of the principal to the life tenant if she should so request in writing. If such an interpretation were ac-

cepted, the creation of the trust by testatrix would have served no useful or practical purpose. The trustees can only invade principal in accordance with the provisions of the will "for the education, comfort, maintenance and support" of the life tenant during illness "or emergency of any kind." This language is not free from doubt but it is crystal clear that the right of the trustees to invade principal is limited and subject to judicial control. It is equally clear that the life tenant, Virginia H. Harris, is not the absolute owner of the trust property. Her issue, if she leaves any surviving her, have a vested interest in the corpus, and if she leaves no issue, the interest they would have had passes to testatrix's descendants. See O'Brien Estate, 381 Pa. 322 (1955).

The auditing judge agrees, however, that the expenditures on account of distribution, as shown by the present account, were properly made as "emergency" expenditures under the circumstances of the present case. The maintenance of a summer home at Ocean City, Maryland, represented a normal way of life for the life tenant. In addition, the property, which include rental beachfront apartments, was a profitable investment of the life tenant and her husband, to which they contributed more than half of the rehabilitation costs.

The auditing judge does not deem it necessary to consider further the meaning of "emergency" under the terms and provisions of testatrix's will. The matter was thoroughly and exhaustively explored by Judge Saylor in his adjudication of May 30, 1958, and the circumstances of the present case appear to be well within the purview of the following language of the Superior Court in Dobbin's Estate, 148 Pa. Superior Ct. 177 (1942), where the court said:

"The will must be read in the light of the fact that appellant was testator's daughter and the principal

object of his bounty; the remainderman is a corporate charity. In the construction of a will, every intendment is to be made in favor of the heirs or next of kin. Wood's Estate, 321 Pa. 164, 184 A. 113. The 'emergency' which gives the daughter the right to withdraw, is not qualified or restricted in the will to an emergency of any particular character or kind. The language is general, and the provision is operative in any pressing situation, personal to the donee, which the payment of money will relieve."

If there were any doubt in this case, the auditing judge would be reassured by the successful course of the administration of the estate, which reveals that the corpus of the trust has been almost doubled by the trustees since its inception in 1944.

The account, showing distributions of principal aggregating $14,209.52, for the purposes above indicated will accordingly be confirmed as stated. . . .

And now, April 6, 1964, the account is confirmed nisi.