Estate of Andrew Nebinger, deceased. Appeal of John B. Landis, Guardian.

185  399
202  394

*Will—Intestacy—Remainders.*

Testator after disposing absolutely of two fourths of his residuary estate gave one fourth in trust for his sister for life, and at her death one half of the income of said fourth to his nephew for life, and half of the income to his niece for life. At the death of the niece, he gave one half of the principal of the share so held in trust, being one sixteenth of his residuary estate, to her children; and in case of her death without children or other issue, then the whole of the principal of one eighth to a certain charity. This charity was the ultimate remainderman as to other shares of the residuary estate, and it also received a money legacy under the will. The niece died leaving children to survive her. *Held*, that testator died intestate as to one half of the fund held in trust for the niece, and it was error to award to the charity designated one sixteenth of the residuary estate.

Argued Jan. 11, 1898. Appeal, No. 207, Jan. T., 1897, by John B. Landis, from decree of O. C. Phila. Co., April T., 1888, No. 141, sustaining exceptions to adjudication. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to adjudication. Before HANNA, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to adjudication.

———— *Smead*, of *Landis & Smead*, and *R. M. Henderson*, for appellants.—Our courts make all reasonable efforts to find and effectuate the meaning of the testator's words. If he will not take the trouble to devise and bequeath all his property by sufficient language, nature and the law step in and give it to the heir or next of kin, to whom "by nature and law" it belongs. This occurs sometimes even in spite of the testator's attempt to dispose of it otherwise, as in cases of lapsed legacies in the absence of a residuary clause, or in case of the lapse of an "ill given" part of the residue itself: Reed's Est., 82 Pa. 428; Gray's Est., 147 Pa. 67; Wahn's Est., 156 Pa. 194; Gorgas's Est., 166 Pa. 269;

Allen v. Allen, 18 Howard, 385; Rupp v. Eberly, 79 Pa. 141; Earl of Newburgh v. Countess Dowager of Newburgh, 5 Maddock, 364; Miller v. Travers, 8 Bingham, 21 English C. L. Rep. 524; Hubbard v. Hubbard, 15 Adolphus & Ellis (69 Eng. C. L. Rep.), 227; Webber v. Stanley, 16 C. B. Rep. (111 Eng. C. L. Rep.) 698; Eastwood v. Lockwood, Law Rep. 3 Eq. Cas. 487.

If the case be at all doubtful, that doubt should be decisive in favor of the heir and next of kin: Brendlinger v. Brendlinger, 26 Pa. 131; Clayton v. Clayton, 3 Binney, 476; Bender v. Dietrick, 7 W. & S. 284; Carman's App., 2 Penny. 332; Hancock's App., 112 Pa. 532; Baker & Wheeler's App., 115 Pa. 590; Cox v. Sims, 125 Pa. 522; Sauer v. Mollinger, 138 Pa. 338; De Silver's Est., 142 Pa. 74; Bell's Est., 147 Pa. 389; Vaux's App., 156 Pa. 194.

*V. Gilpin Robinson*, for appellee.—Taking the clause in question as it stands, without supplying the omitted portion, it shows an intent to make an absolute gift of the one eighth of the residue of the estate to the Sisters of St. Francis, to be cut down to a one sixteenth in the event of the niece dying, leaving children to survive her: Green v. Hayman, 2 Cases in Chan. 10; Blamire v. Geldart, 16 Ves. 314; Ferry's App., 102 Pa. 207; East v. Cook, 2 Ves. Sr. 30; Stevens's Est., 164 Pa. 209; Hiestand v. Meyer, 150 Pa. 503; Striewig's Est., 169 Pa. 61; Duffy's Est., 36 W. N. C. 199; McKee's Est., 43 Pittsburg Legal J. 385; Boyle v. Boyle, 152 Pa. 115.

Where from the whole tenor of a will it is clear that an omission has been made by mistake, it lies within the jurisdiction of this court to make a correction: Mellor v. Daintree, Law Reps. 33 Chan. Div. 198; Towns v. Wentworth, 11 Moore's Privy Council Cases, 526; In re Redfern, L. R. 6 Chan. D. 133; Sweeting v. Prideaux, L. R. 2 Chan. D. 413; Boys v. Williams, 2 Russ. & M. 689; McKeehan v. Wilson, 53 Pa. 74; Philipps v. Chamberlaine, 4 Vesey, 51; Kerr on Fraud & Mistake, 448; 1 Story's Equity Jurisp. sec. 179, 183; Hampshire v. Peirce, 2 Ves. 216; Mellish v. Mellish, 4 Ves. 45: Grimes v. Harmon, 35 Ind. 208; Davis v. Henry, 121 Mass. 150; Lancaster Co. v. Frey, 128 Pa. 593; Lancaster Co. v. Lancaster City, 160 Pa. 411; Lancaster Co. v. Lancaster City, 170 Pa. 108; 29 Am. & Eng. Ency. of Law, p. 354, note; Miller's Appeal, 113 Pa. 459.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 11, 1898:

This appeal by the guardian of the three minor children of Annie H. Beetem, deceased, from the decree of the court below, sustaining exceptions to the adjudication of the auditing judge, involves the construction of the last will of Andrew Nebinger, deceased. After making pecuniary bequests to individuals and charities the testator says: "I give and bequeath unto the Sisters of the Order of St. Francis the sum of five thousand dollars, to be by them used and expended in the erection and construction of a hospital on the lot bounded on the north by Tasker street, south by McKean street, east by Broad street, and west by Nebinger avenue." He then says: "As to the rest, residue and remainder of my estate, real, personal and mixed, of what nature and kind soever, and wheresoever the same may be at the time of my decease, I give, devise and bequeath as follows:" Two fourths are then given to his brother Robert absolutely. One fourth is given as a separate use trust to his sister Charlotte C. Sheafer for life; after her decease, one half of this fourth is to be held in trust for her son Andrew N. Sheafer for life, if living, and on his death in trust for his children. He then continues: "As to the other half part of said principal, which is the one sixteenth of my residuary estate, to grant, convey and assign the same to the Sisters of the Order of St. Francis, their successors and assigns, to be by them expended in the construction and erection of the hospital on the above-mentioned lot of ground." In the event of the death of his nephew, Andrew N. Sheafer, without issue, this one eighth part of the residuary estate is given to the Sisters of the Order of St. Francis, in language identical with that employed in a similar bequest in the next paragraph of the will, substituting nephew for niece. In the next paragraph,—the one in dispute —he says: "And at and immediately upon the decease of my said sister, then to collect and receive the rents, issues and profits thereof and pay the remaining half part thereof from time to time,—when and as the same shall be got in and received,—unto my niece Annie H. Beetem, daughter of my said sister Charlotte C. Sheafer, for and during the term of her natural life, so nevertheless that the same shall be for her sole and separate use notwithstanding any coverture, and not to be in any way or manner whatever liable to the contracts or engagements of any

husband, and not to be in any way or manner subject to the control or interference of such husband. And at and immediately upon the decease of my said niece, Annie H. Beetem, if she shall leave any child or children, or lawful issue of any deceased child or children her surviving, then as to the principal of the share in trust, as to the one half part thereof, being the one sixteenth of my residuary estate, to and for the only proper use and behoof of all and every the child or children which she my said niece Annie H. may leave surviving her, and the lawful issue of any of them, who may then be deceased having left such issue, to be equally divided between them share and share alike, such issue of any deceased child of my niece taking however only such part or share as his, her or their deceased parent or parents would have had or taken had he, she or they been living. And in the event of the decease of my said niece without any child or children or issue of any deceased child her surviving, then in trust to grant, convey and assign the whole of the said principal sum which is the one eighth part of my said residuary estate, unto the Sisters of the Order of St. Francis, their successors and assigns to be by them used and expended in the erection of the hospital as above stated."

The remaining one fourth of the residuary estate is given in trust for another sister, Mrs. Mary A. McMinn, for life, and then to her husband for life, and at their death the sum of $2,000 is directed to be paid to each of three charities, "and the residue thereof unto the Sisters of the Order of St. Francis to be by them used and expended in the erection and construction of the aforesaid hospital building."

Testator's niece, Annie H. Beetem, died leaving three minor children surviving her, whose guardian is the appellant. The learned auditing judge held that, under the above quoted paragraph of the will, there was an intestacy as to the one sixteenth part of the residue included but not disposed of therein, and accordingly awarded the same to the testator's heirs at law; but the court in banc, sustaining exceptions to the adjudication, awarded the fund to the Sisters of the Order of St. Francis, in order to carry out what was held to be the testator's intention as expressed in his will. In this we think the learned court erred. In our opinion the will is not susceptible of such construction.

When no evidence has been introduced to explain ambiguous expressions, or when no ambiguity exists, the language employed by the testator is our only guide.  In this case, the testator, in terms which call for no construction, disposed of two fourths of his residuary estate absolutely, after specific bequests.  The remaining two fourths are separate use trusts for and during the respective lives of testator's two sisters.  After further contingent trusts, and at their termination, the remainders, with the exception of the one sixteenth in question, are left in unequal proportions to several charities.  That one sixteenth part of the residue is undisposed of only in the event of a life tenant (Mrs. Beetem) dying with issue then living,—an event which has actually happened.  Provision is made for the death of said life tenant, without issue surviving her; in which event, the one sixteenth in question with another equal portion, theretofore settled on the life tenant, passes to the Sisters of the Order of St. Francis.

Appellee's contention is that the failure to dispose of the one sixteenth in question was an oversight on the part of the scrivener or of the testator,—that the intent of the latter not to die intestate is apparent from the will, and that the bequest of this and another equal portion to the Sisters of the Order of St. Francis, in the event of the life tenant dying without issue, shows an intent that the same sisters should have the portion in question.  It is further suggested that they are given the residue of the Mary A. McMinn trust, and that the clause disposing of the one sixteenth held in trust for Andrew N. Sheafer, upon his death, is identical with the clause disposing of the one sixteenth held in trust for Annie H. Beetem, upon her death, with the exception of the omitted portion.

Speaking of the interest of the appellee under these two last mentioned clauses, the learned court below says: " That its share in the gift to the niece was meant to be identical with the share in the gift to the nephew, is as clear as anything in the compass of probabilities." This much may be conceded, and yet the appellee may not be entitled to the fund. It is not a question of probabilities, but of intention.

In Jarman on Wills, *356, it is said : " Conjecture is not permitted to supply what the testator has failed to indicate, for as the law has provided a definite successor in the absence of dis-

position, it would be unjust to allow the right of this ascertained object to be superseded by the claim of any one not pointed out by the testator with equal distinctness.   The principle of construction here referred to has found expression in the familiar phrase that the heir is not to be disinherited unless by express words or necessary implication."   In DeSilver's Estate, 142 Pa. 75, the learned court below used the following language, which on appeal was adopted by this Court: "The rights conferred by the intestate laws are only taken away by a will which effectually disposes of the entire estate of the decedent; and while a construction is not to be adopted, if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportion of reformation.   The question is confined to the meaning of what the testator has said, and does not extend to the consideration of what he might have said, but did not.   The maxim also is fundamental that the heir or statutory distributee will not be disinherited except by express words or necessary intendment."

In this state, the rule, that in the construction of a will of doubtful meaning every intendment is to be made in favor of the heir or next of kin, is of universal application: Clayton v. Clayton, 3 Binney, 486; Brendlinger v. Brendlinger, 26 Pa. 132; Hancock's Appeal, 112 Pa. 532.   As an illustration of the extent to which our courts have gone in the interest of the heir, it is only necessary to refer to Gray's Estate, 147 Pa. 67, where the cases are reviewed, and it is held that a lapsed legacy passes to the next of kin, as a case of partial intestacy, although this rule, as stated by our Brother MITCHELL, on page 74, "is a sacrifice of the well settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent,—shown in the appointment of general residuary legatees,—that the next of kin shall not participate in the distribution at all.   The rule is in fact a concession to the set policy of the English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels to the heir and next of kin whenever it can be done."   In Waln's Estate, 156 Pa. 194, it was held that where part of a residuary legacy is revoked by codicil without a substitutionary gift, the amount passes to the next of kin and not to the other residuary legatees, notwithstanding the rule that the execution of a codicil is a republication of the will.

Appellee contends, however, that Ferry's Appeal, 102 Pa. 207, and Stevens's Estate, 164 Pa. 209, are direct authorities for a transposition of the language of the will, by placing the last sentence of the paragraph under consideration before the sentence immediately preceding it, and in that way expressing the meaning for which the order contends. But, in both the cases cited, it is plain that the testator, as stated in the opinion of the court in the former case, "neglected . . . . to give the natural and logical order of his thought." In 2 Jarman on Wills, 499, the learned author intimates that the transposition of words or sentences should be limited to cases where a clause or expression is otherwise senseless or contradictory. As an illustration of this, see Sauer v. Mollinger, 138 Pa. 338.

It is practically conceded by the learned counsel for appellee that such construction is permissible only in case of apparent ambiguity due to the language of the will itself. He accordingly argues that "the words, 'hospital as above stated,' in the clause as it stands, without supplying the omission, clearly relates to the omitted portion (consisting of over fifty words), and shows that it was omitted." Unfortunately for this contention, the quoted words apply with equal force to the bequest of $5,000 in the earlier part of the will. If the language here used had referred to the hospital "as above-stated in this paragraph " or by other words indicated an omission and the character thereof, there would be much force in the suggestion; but as there is nothing here to take the case beyond the limits of mere conjecture, however much we may be satisfied that there was an omission of some sort, we have no means of supplying it. Without further consideration of the subject, we think the learned auditing judge was right in holding that there was intestacy as to the one sixteenth in question, and, as to so much of the decree as relates to that amount, the same is reversed with costs to be paid by the appellee, and the record remitted for correction in accordance with this opinion.