# Bender *v.* Bender, Appellant.

*Wills—Devise—Construction—Intention.*

1. In construing a will the rule requires that it be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator, as extracted from the whole will, should follow from so reading it. Where this occurs a construction may be adopted avoiding these consequences.

2. Words and limitations may be supplied or rejected when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention however reasonable, in opposition to the plain and obvious sense of the instrument. It is the expressed intention that governs.

3. A devise by a father to a son, naming him, "or his children," is substitutional in character, and the word "or" will not be construed to mean "and" where there is nothing in the general scheme of the will or any single provision thereof which requires such a construction. Under the devise the son takes a fee if he survives the testator. In such a case the Act of April 8, 1833, P. L. 249, which provides against the lapse of a devise to a son cannot be used as an argument against such construction.

Argued Nov. 2, 1909. Appeal, No. 201, Oct. T., 1909, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 32, on verdict for plaintiff in case of Roybert Bender v. Lee Vernella Bender. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Ejectment for land in the nineteenth ward of the city of Pittsburg.

From the record it appeared that the will of Philip Bender was as follows:

"I the undersigned divide my property as follows:

"Should I die before my wife then all property shall go to my wife Catherine Bender nee Seibert, as long as she can and wants to administer it. After that it shall be divided as follows:

"Lot No. 1 Beginning Mignonette and St. Clair Street, 30 feet front on Mignonette Street. Thence along the fence 69½ feet; thence along the fence to St. Clair Street, along St. Clair Street 69½ feet to point of beginning. House and lot to go to Till Dorotea Alexander nee Bender.

"The other part of Lot No. 1 beginning at No. 1 on St. Clair Street, 30 feet along the fence to No. 2 Thence along the fence 30½ feet to a 10 feet alley, along the alley 30 feet to St. Clair Street, along St. Clair Street, 30½ feet to point of beginning. House and Lot to go to Louise Huber nee Bender.

"Lot No. 2 beginning at No. 1 30 feet front on Mignonette Street. Thence running 100 feet back to a ten feet alley along the alley 30 feet to Lot No. 1 Thence along No. 1 100 feet to point of beginning on Mignonette Street. House and lot to go to Henry Bender or his children.

"Lot No. 3 Beginning at No. 2 30 feet front on Mignonette Street to Phillipp Menges line along Phillipp Menges line 100 feet to a 10 feet alley along the alley 30 feet to Line No. 2. Thence along No. 2 100 feet to point of beginning, Mignonette Street. House and lot to go to Phillipp Bender or his children.

"Lot No. 4 Beginning at the 10 feet alley 20 feet on St. Clair Street to M. Rees Line along M. Rees line 90 feet to 30 feet street, along the street 20 feet to the 10 feet alley, along the alley 90 feet to a point of beginning St. Clair Street House and lot to go to Johannes Bender or his children.

"The 10 feet alley remains private alley exclusive for the Bender property; should the street be opened then the front lots shall have the same privilege to the alley as the 20 feet lot.

"The two lots in Meck Gonickgels Plan on Lingkoln Avenue as described in deed shall go to Carl Frank Ernest.

"Should I the undersigned die first, then my wife shall

have the right to make her home in either of the houses. In case this paper should come into the hands of a stranger and I should survive my wife, then this document shall be null and void. Then I can dispose as I please." —

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant, and in refusing to enter judgment for defendant non obstante veredicto.

*Wm. E. Schoyer,* of *Lyon & Hunter,* for appellant.—A devise to a man or his children is the shortest form of substitutional devise. It means that if the devisee shall die before the testator, or, if there be a precedent life estate, during the pendency thereof, the property devised shall vest in the devisee's children as purchasers, and that if he survives to the period of vesting he becomes the absolute owner thereof in fee simple: McCormick v. McElligott, 127 Pa. 230; Mickley's App., 92 Pa. 514; Stooks' App., 20 Pa. 349; Gibbons v. Fairlamb, 26 Pa. 217; Raleigh's Est., 206 Pa. 451; Gilmor's Est., 154 Pa. 523; Taylor v. Taylor, 118 Iowa, 407 (92 N. W. Repr. 71).

There is nothing in the will to change the ordinary construction of the devise to John C. Bender: Griffith v. Woodward, 1 Yeates, 316; McKeehan v. Wilson, 53 Pa. 74; Lipman's App., 30 Pa. 180.

*S. G. Nolin,* with him *D. S. McCann* and *James T. McDonald,* for appellee.—It is an incontrovertible rule of construction that a devise to a man and his children confers only a life estate on the father and vests a fee simple in the children: Crawford v. Forest Oil Co., 208 Pa. 5; Hague v. Hague, 161 Pa. 643.

It has been held time and again by the Supreme Court that the word "or" will be construed "and" where it is necessary to give effect to the true meaning of a testator: Tripp's Est., 202

Pa. 260; Doebler's App., 64 Pa. 9; Holmes v. Holmes, 5 Binney, 252; Conway's Est., 181 Pa. 156; Kelley v. Kelley, 182 Pa. 131; Hauer v. Sheetz, 2 Binney, 532; Scott v. Price, 2 S. & R. 59; Beltzhoover v. Costen, 7 Pa. 13; Menoher's Est., 18 Pa. Superior Ct. 335.

It follows from the principles cited above that if the clause in the will under discussion, "House and lot to go to Johannes Bender or his children," can be construed, in order to carry out the intent of the testator, "House and lot to go to Johannes Bender and his children," that then, Johannes Bender being now dead, the appellee in this case is the owner of the fee simple title to one-half the land in dispute: Fox's App., 99 Pa. 382; Woelpper's App., 126 Pa. 562; Tyson's Est., 191 Pa. 218.

The words " or his children " were not used in the devises to the sons for the purpose of preventing a lapse: Act 7, April 8, 1833.

OPINION BY MR. JUSTICE STEWART, January 3, 1910:

The case turns on the devise contained in the will of Philip Bender made March 13, 1895, and probated November 25, 1896. Testator gave, first, to his wife a life estate in all his property. Then, following a description of the particular premises here in dispute, he directed as follows, "House and lot to go to Johannes Bender or his children." Johannes was a son of the testator, and the plaintiff in the action below is a son of Johannes, by a first wife. Testator's widow died in 1904, Johannes surviving. The latter died October 23, 1905. By his last will duly probated he devised the lot in dispute to the defendant, who was his second wife. This sufficiently indicates the status of each of the several parties to the controversy. Philip Bender, whose will we are considering, left two daughters, both married, and three sons also married. He devised to each, in one form or another, a specific piece of property. The devise to each daughter was to her individually, unaccompanied by any words indicating that anything short of an absolute estate was intended by the gift. The several devises to the sons were alike in form, but differed

from the devises to the .daughters in that in each case the
devise was to the son, "or his children." We mention this
circumstance only to note that Johannes acquired the same
estate in the lands devised to him that his brothers acquired
in the land devised to them respectively; and the further
fact, that for his own purposes, the testator clearly distin-
guished between the estates given his daughters and those
given his sons. The case presents a single question, What
estate or interest did Johannes acquire under the devise to
him "or his children"? If a fee simple estate contingent
upon his surviving the testator or the life tenant, as the case
might be, then it follows that the estate became absolute in
him, and passed to the defendant as his devisee. If, on the
other hand, he took but a life estate, then the fee passed
directly to the plaintiff for his proportional interest therein,
whatever that might be. The action was ejectment; and a
verdict was directed for the plaintiff, the court reserving as
question of law the effect to be given the devise. A motion
for judgment non obstante was subsequently dismissed, the
court holding that the word 'or' as it occurs in the devise
should be read 'and'; and that so corrected the devise gave
to Johannes simply a life estate. We are not concerned to
inquire what estate Johannes would take under this recon-
structed devise. The question is, what estate did the testator
intend him to take? Whence is derived the authority to make
any alteration in the devise as written? Clearly this was a
case where the learned court fell into serious error through
attempting to construe something which did not call for
construction. There was nothing in the devise that called
for the application of artificial rules in order to discover the
testator's intention. A testator must be allowed to be his
own interpreter when he expresses himself in language free
from obscurity, and which, as by him employed, conveys a
certain definite meaning, to the exclusion of any other. When
he succeeds in doing this he has expressed his own meaning,
and that the law accepts as the equivalent of intention. That
this testator so succeeded in this particular devise admits of
no question. In grammatical construction the devise is

entirely correct; and it is so definite in expression and terms that but one meaning can be derived from it. It points unmistakably to an alternative gift, and with equal certitude to the intended alternate beneficiary. Why, then, shall there be an exposition of the devise contrary to the words used? That it is modified or changed in any way by subsequent reference to it in the will, cannot be pretended, for it is not once referred to. That it conflicts with any general scheme which can be derived from the will cannot be urged, for there is not a single provision dependent upon it, or which cannot be enforced concurrently with it. Were the devise uncertain because of ambiguity in some of the words used, it is quite possible that sufficient could be found in other parts of the will to resolve the doubt; but, entirely intelligible and complete in itself, no borrowed light is needed for any purpose in connection with it. Ex vi termini the devise imports a substitutional gift, to provide against a possible failure of Johannes to take. This is peculiarly the case where the word "or" is interposed between the name of the devisee and words of purchase descriptive of the alternative. "The simplest form of a substitutional gift is effected by the use of the word 'or,' which is usually construed as implying substitution. But in order for a gift to be substitutional, the legatees seeking to put themselves in the place of the deceased legatee, must show that they take by purchase and not by descent:" 30 Am. & Eng. Ency. of Law, 812. Our own case of Gilmor's Est., 154 Pa. 523, besides being explicit and directly in point, makes such full reference to the authorities that other citation here is unnecessary. Cases where the word "or," followed by words of imitation such as heirs or heirs of the body, has been changed into "and," are not infrequent; but our attention has not been called to a single one where the change was made when the words following the disjunctive were words of purchase. We do not say that the change may not be proper in any such case; but the reasons justifying it must not only be found in other parts of the will, but they must be positively compelling to the common understanding. It is argued that it was no part of testator's purpose to provide against the

lapse of the devise to Johannes because it was wholly unnecessary to do so, since under the Act of April 8, 1833, P. L. 249, there could have been no lapse. Whether a lapse could or could not have occurred, is of no consequence so far as enabling us to understand what was in the testator's mind when he wrote his will. How are we to know what his understanding of the act of 1833 was? and how would it help us if we did know? The argument assumes that testator had the act in his mind when he wrote the will, and knew that it prevented lapsing. From this assumption the deduction is made that he must have used the word " or " inadvertently or by mistake. The non sequitur here is apparent. The argument proceeds, "If the word ' or ' was not intended to prevent a lapse, it must unquestionably have been intended for some other purpose; and if the testator was not providing against a lapse, what other purpose could have been intended than to vest a fee simple in the children?" Such clearly was his purpose; but only in the event of the parent's failure to take. The same estate that the parent would take if he survived, was given his children in the event of failure. We have indicated quite enough to show on what feeble basis the court relied for its justification in changing the language of this devise. At best it is pure conjecture. In construing a will the rule requires that it be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared. intention of the testator, as extracted from the whole will, should follow from so reading it. Where this occurs a construction may be adopted avoiding these consequences. Words and limitations may be supplied or rejected when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention however reasonable, in opposition to the plain and obvious sense of the instrument. It is the expressed intention that governs. Here it is expressed in no uncertain way, and to give it effect this judgment must be reversed. It is so ordered, and judgment is now entered for the defendant.