898 A.2d 547

In re ESTATE OF Regis F. BURGER, M.D.

Appeal of Janice B. Leckey.

Supreme Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided May 25, 2006.

William R. Caroselli, Esq., Edward C. Leckey, Esq., Pittsburgh, for Janice B. Leckey.

Kevin L. Colosimo, Esq., Samuel Herman Simon, Esq., Pittsburgh, for Linda Nash.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and BAER, JJ.

## *OPINION*

Justice SAYLOR.

In this appeal, Appellant challenges a determination that she lacks standing to pursue a will contest. The outcome turns on a statutory rule of interpretation applicable to wills, which embodies the public policy disfavoring partial intestacy.

In March 2000, Regis F. Burger, M.D. ("Dr. Burger") prepared the last of a series of several wills, in which he named five beneficiaries to share in the residue of his estate. Dr. Burger was a widower with no children of his own, and the residuary legatees were the heirs of his deceased sister, Anzelma Burger Nash, including her granddaughter, Linda Nash ("Appellee"), each of whom was designated to receive a specified, fractionalized share of the residue. For example, with regard to Appellee, who was to receive the largest share, the will provided as follows:

I give 50% of my residuary estate to LINDA NASH, 120 Bingay Drive, Pittsburgh, Pennsylvania 15237. If LINDA NASH does not survive me, the assets which would have been distributed to her had she survived me shall be distributed proportionally to the other persons entitled to distribution pursuant to this paragraph SEVENTH.

The residuary clause was similar to those that were contained in prior wills, but Dr. Burger had increased Appellee's share of the residuary estate in each new will, from twenty-five percent in 1998, to thirty-four percent in 1999, to fifty percent in 2000. The March 2000 will also named Appellee and National City Bank of Pennsylvania as executors, as distinguished from earlier wills in which solely the bank was designated. This will, however, like the prior wills, did not mention Dr. Burger's brother James, or James' daughter and heir, Janice Burger Leckey ("Appellant").

Dr. Burger died in November 2002, leaving an estate valued at over $2.5 million, the bulk of which qualified as residue under his March 2000 will. The executors caused the will to be admitted to probate and procured letters testamentary. Appellant filed a notice of appeal and initiated a limited will contest in the orphan's court via a petition for citation to show cause why the instrument should not be set aside in part.

In her petition, Appellant did not question Dr. Burger's capacity to execute his last will and did not challenge the particular legacies or the residuary bequests to his sister's heirs other than Appellee. Appellant alleged, however, that the increases in the residuary bequest to Appellee, and her

appointment as executrix, were the product of undue influence. In this regard, Appellant averred that, as of March 1999, Dr. Burger had granted a broad power of attorney in favor of Appellee and, by the end of that year, Dr. Burger's physical and mental condition had weakened and Appellee had assumed responsibility for his finances, terminated the services of a twenty-four-hour caregiver, and otherwise engendered and exploited a confidential relationship. According to Appellant, the twenty-five percent increase in the residuary bequest to Appellee should therefore be deemed void, and the result should be a partial intestacy, from which Appellant should benefit as the person nearest by degree of consanguinity to Dr. Burger, and his fifty-percent intestate heir.

Appellee filed preliminary objections in the nature of a demurrer, contending that Appellant lacked standing to pursue her limited will contest, because Dr. Burger's will provided for a complete distribution of his residuary estate; Appellant was not a beneficiary thereof; and she would not otherwise benefit from a determination that the will was partially invalid. *See generally Carother's Estate*, 300 Pa. 185, 188, 150 A. 585, 586 (1930) ("Where the contestant to a will that is void in part receives no benefit from the contest he is not entitled to sustain a caveat nor take an appeal from the action of the court below[.]").[1] Appellee recognized that, in the absence of a will, Appellant would be an intestate heir; nevertheless, she contended that Dr. Burger's provision for an alternate disposition of residuary bequests that would fail by reason of the beneficiary's death evinced an intention that the same disposition should ensue should a

---

1. *Carother's Estate* involved a circumstance similar to the present one, in that an intestate heir sought to pursue a will contest on an undue influence theory. *See id.* at 186–87, 150 A. at 585–86. The case is distinguishable primarily because the challenged bequests were specific ones, rather than residuary. *See id.* Indeed, the holding that the appellant lacked standing to pursue the contest was predicated on the uncontested specification of a residuary legatee. *See id.* at 188, 150 A. at 586 ("Where legacies or bequests are declared void for any reason and the will contains a residuary clause disposing of the residue of an estate, the bequests invalidated pass under the residuary clause unless the scheme of the will or testator's intention provides otherwise: Page on Wills, section 507.").

residuary bequest fail for any other reason. Further, in her supporting brief, Appellee cited a rule of interpretation set forth in Section 2514(11) of the Probate, Estates and Fiduciaries Code, which applies in the absence of a contrary intent discernable from a will. *See* 20 Pa.C.S. § 2514 ("In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules[.]"). Clause (11), which resides among several others that are designed to avoid partial intestacy and function as anti-lapse and void legacy provisions, prescribes as follows:

**(11) Lapsed and void devises and legacies; shares in residue.** When a devise or bequest as described in clause (10) hereof shall be included in a residuary clause of the will and shall not be available to the issue of the devisee or legatee under the provision of clause (9) hereof, [2] and if the disposition shall not be otherwise expressly provided for by law, it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue.

20 Pa.C.S. § 2514(11). According to Appellee, this clause, and the associated decisional law, dictate that any failed devise or bequest, including a share of the residuary estate, would fall to the remaining residuary beneficiaries.

In her response, Appellant relied on clause (11)'s specific cross-reference to the preceding clause, clause (10), which establishes a presumption applicable to specific devises and bequests, as follows:

**(10) Lapsed and void devises and legacies; shares not in residue.** A devise or bequest *not being part of the residuary estate* which shall fail or be void because the beneficiary fails to survive the testator or because it is contrary to law or otherwise incapable of taking effect or which has been

---

**2.** Clause 9 of Section 2514, a pure anti-lapse provision, provides for substitution of issue in the event that certain related beneficiaries predecease the testator. *See* 20 Pa.C.S. § 2514(9). Since neither Appellant nor her father were beneficiaries under Dr. Burger's will, there is no argument presented that clause (9) has any direct bearing on the outcome of this case.

revoked by the testator or is undisposed of or is released or disclaimed by the beneficiary, if it shall not pass to the issue of the beneficiary under the provisions of clause (9) hereof, and if the disposition thereof shall not be otherwise expressly provided for by law, shall be included in the residuary devise or bequest, if any, contained in the will.

20 Pa.C.S. § 2514(10) (emphasis added). Since under a literal reading clause (11) of Section 2514 applies only to "a devise or bequest as described in clause (10)," and clause (10) pertains only to specific or particular gifts, Appellant maintained that clause (11) cannot apply to a lapsed or void residuary bequest as such. *See* Brief In Opposition to Preliminary Objections of Linda Nash, at 5 ("In short, the Rule in clause (11) of the section, by its terms, applies to bequests which were originally not part of the Residuary, but, by the provisions of clause (10), are made part of the Residuary. The plain language of 20 Pa.C.S. § 2514(11) does not apply to a failed bequest which was originally part of the Residuary.").

The orphan's court sustained the preliminary objections, agreeing with Appellee's position that Appellant lacked standing. The court noted that Appellant's interpretation of Section 2514(11) was a novel one that ignored the plain meaning of the language used in the headings for clauses (10) ("Lapsed and void devises and legacies; shares not in residue") and (11) ("Lapsed and void devises and legacies; shares in residue"). In conformity with such headings, the court concluded that clause (10) offers guidance on the disposition of lapsed or void specific bequests, whereas clause (11) provides the same direction for residuary bequests. The court read clause (11)'s cross-reference to clause (10) as merely incorporating the specified reasons why a bequest or devise might fail, *see* 20 Pa.C.S. § 2514(10) (providing a presumption of intent to accomplish a substitute gift where "the beneficiary fails to survive the testator or because it is contrary to law or otherwise incapable of taking effect or which has been revoked by the testator or is undisposed of or is released or disclaimed by the beneficiary"), but not as requiring that a specific devise or bequest must be involved in the first instance to implicate

clause (11). In any event, the orphan's court agreed with Appellee's argument that Dr. Burger's provision for an alternative disposition in the event of Appellee's death should be treated as evincing an intention to effect the same distribution in a broader range of circumstances, including partial invalidity of his will on account of undue influence. Thus, the court determined that a partial intestacy would not be created, even if Appellant were able to prove undue influence.

The Superior Court affirmed in a published decision. *See In re Estate of Burger*, 852 A.2d 385 (Pa.Super.2004). At the outset, the court recognized that, in order to sustain a demurrer, the orphan's court was required to find that no recovery was possible on the facts averred, and that the appellate review of this legal question was plenary. *See id.* at 388. The court also cited the generally prevailing presumption against intestacy, *see generally In re Estate of Hill*, 432 Pa. 269, 273, 247 A.2d 606, 609 (1968); highlighted that the anti-lapse and void legacy provisions of Section 2514 operate in furtherance of such policy; and observed that a testator's "contrary intent" to provide for a different disposition of his property need not be express, *see In re Estate of Corbett*, 430 Pa. 54, 61 n. 7, 241 A.2d 524, 527 n. 7 (1968), but need only appear "with reasonable certainty," *Estate of Kehler*, 488 Pa. 165, 167, 411 A.2d 748, 750 (1980). *See Estate of Burger*, 852 A.2d at 388–89.

The Superior Court then rejected Appellant's argument that the provision of Dr. Burger's will directing an alternative disposition for the residuary bequest to Appellee in the event of her death should not apply should the gift fail for a different reason. In the first instance, the Superior Court criticized Appellant's citation to *In re Berger's Estate*, 360 Pa. 366, 61 A.2d 855 (1948), which defined the concept of "lapse" narrowly in terms of "the failure of a testamentary gift in consequence of the death of the devisee or legatee during testatrix's lifetime," and refused to apply a testator's instructions for a lapse where the beneficiary did not predecease the testator. *See id.* at 371, 61 A.2d at 857. The court reasoned that the decision was directed to the actual disposition of a

bequest, as opposed to the question of whether a testamentary instrument manifests sufficient indicia of "contrary intent" to prevent Section 2514 from affecting the disposition of a potentially lapsed or void bequest. *See Estate of Burger*, 852 A.2d at 390.[3] The court further deemphasized a testator's prescription of a specific reason for failure as the trigger for an alternative disposition, reasoning as follows:

Whether a testator's bequest "lapses" because the beneficiary has predeceased him, or has failed for some other reason, the testator's expression of intent for the disposition of the affected property remains to be honored to the extent possible. Thus, if a bequest fails, (albeit under a scenario less common than the beneficiary's death) and an alternative disposition is specified, we cannot presume that had the bequest failed for a different reason the testator's intent for the descent of the property to someone else would change. Simply stated, there is no necessary connection between the reason for the failure of a bequest and the testator's determination of a secondary beneficiary. Where, as here, the Will makes clear that the testator was cognizant of the possibility that his bequests might not be effectuated as written and gave specific direction for the treatment of those bequests, we are compelled to conclude that his intent to dispose of the property via Will is at least "reasonably certain." *Estate of Kehler*, [488 Pa. 165, 167,] 411 A.2d [748,] 750 [ (1980) ].

*Estate of Burger*, 852 A.2d at 390. Consequently, the Superior Court held that "the provisions of the anti-lapse statute

---

**3.** The Superior Court's analysis in this regard is confusing, since Section 2514 contains rules of interpretation for the disposition of property that pertain in absence of an expressed contrary intention in a will, and any expression or implication of contrary intention must therefore go to the direction of the disposition of the property at issue. Indeed, the Superior Court otherwise recognized the close relationship between the applicability of the anti-lapse and void legacy provisions of Section 2514 and the indication of an alternative disposition in a will. *See Estate of Burger*, 852 A.2d at 390 (indicating that, in light of its finding that Dr. Burger's will evinced a contrary intent with reasonable certainty, "the provisions of the anti-lapse statute cannot be applied *and the disposition of [Appellee's] interest, if deemed void, is controlled by the Will* " (emphasis added)).

cannot be applied and the disposition of [Appellee's] interest, if deemed void, is controlled by the Will. Intestacy does not result and [Appellant] is thereby deprived of standing to raise her claim." *Id.* Finally, in view of its disposition, the court declined to address the parties' dispute concerning the meaning of clause (11) of Section 2514.

■ Presently, Appellant contends that the decisions of the orphan's court and the Superior Court are tantamount to a judicial reformation or rewriting of Dr. Burger's will. In this regard, Appellant reiterates that the will provided for an alternative disposition of the residuary bequest to Appellee only in the event that she would not have survived him, and that it made no provision for an alternative disposition of any part of this residuary bequest should it lapse or fail for any other reason. Since the potential for a failure due to undue influence is a contingency that is not addressed in the will, Appellant argues that this Court's decisions mandate a finding of partial intestacy should undue influence be found.[4] With

4.  In this regard, Appellant cites to a myriad of cases that have distinguished between proper interpretation based on the terms of a will in light of the surrounding circumstances, and efforts to move beyond such terms to address how the testator may have wished to confront circumstances that were not contemplated and are not addressed by the will viewed in its surrounding circumstances. *See, e.g., In re Estate of Stancik,* 451 Pa. 20, 24, 301 A.2d 612, 614 (1973) (describing as equally basic the presumption against intestacy and the principle that a "court must not and cannot reform or rewrite a will"); *In re Woodward's Estate,* 407 Pa. 638, 640, 182 A.2d 732, 733 (1962) ("[I]t is not what the Court thinks [that a testator] might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of the words."); *In re Estate of Walton,* 409 Pa. 225, 231, 186 A.2d 32, 36 (1962) (same); *In re Estate of Conlin,* 388 Pa. 483, 493, 131 A.2d 117, 122 (1957) (same); *In re Estate of Wright,* 380 Pa. 106, 108, 110 A.2d 198, 199 (1955) (same); *Berger's Estate,* 360 Pa. at 371, 61 A.2d at 857 (" '[W]here the testator ... failed to make provision for a contingency which actually happened, or to cover circumstances which subsequently resulted, a decree of intestacy [is] unavoidable.' " (quoting *In re Verner's Estate,* 358 Pa. 280, 285, 56 A.2d 667, 670 (1948))); *In re Jacob's Estate,* 343 Pa. 387, 392, 22 A.2d 744, 746 (1941) (" 'Words and limitations may be supplied or rejected when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the instrument[.]' " (quoting *Bender v. Bender,* 226 Pa. 607, 613, 75 A. 859, 862 (1910))); *Estate of Nebinger,* 185 Pa. 399, 404, 39 A. 1049, 1051

regard to the statutory anti-lapse and void legacy provisions, Appellant maintains that Section 2514(11) can only be read to apply exclusively to gifts that fail or lapse under Section 2514(10), in light of the plain terms of the clause. Appellant acknowledges that this Court, in various decisions, has applied a contrary construction of the statute,[5] but relies on the fact that the construction that she advocates was never raised in those cases.

Appellee, on the other hand, maintains that Dr. Burger's will evinces a clear intention that any lapsing or failing share in the residuary estate should be divided among the remaining residuary beneficiaries rather than pass through intestacy. In this regard, and like the Superior Court, Appellee highlights decisions that have not required an express provision to demonstrate contrary intent, *see Estate of Corbett*, 430 Pa. at 61 n. 7, 241 A.2d at 527 n. 7, but only that contrary intent appear with reasonable certainty, *see Estate of Kehler*, 488 Pa.

(1898) ("[W]hile a construction is not to be adopted, if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportion of reformation.").

5. The relevant line of cases concerned clause (10) of Section 14 the Wills Act of 1947, P.L. 89, 20 P.S. § 180.14 (superseded), which was substantively identical to clause (11) of Section 2514. *See, e.g., In re Estate of McLaughlin*, 441 Pa. 538, 542–45, 273 A.2d 742, 744–45 (1971) (equally divided Court) (reasoning that clause (10) of the Wills Act of 1947 resulted in enhancement of the shares of residuary legatees upon failure of a testator to provide for a complete disposition of the residuary estate); *Estate of Corbett*, 430 Pa. at 60, 241 A.2d at 527 (same, relative to a lapsed bequest); *In re Slater's Estate*, 377 Pa. 285, 289, 105 A.2d 59, 61 (1954) (same). *See generally* W.W. Allen, *Devolution of lapsed portion of residuary estate*, 36 A.L.R.2d 1117 § 3b (1954 & Supp.1995) (collecting Pennsylvania cases in which the prevailing Pennsylvania anti-lapse and void legacy statute caused the share associated with a lapsed or void residuary bequest to be retained in the residue and divided among the other residuary beneficiaries).

Although the *Estate of McLaughlin* decision from this line was decided by operation of law on account of the Court having been equally divided, the division resulted from a difference of opinion concerning the reasonable certainty of the terms of the will under consideration in the first instance, not from any difference over the meaning of the then-prevailing anti-lapse and void legacies statute. Again, as Appellant acknowledges, her interpretation is a novel one that has never been recognized by the Court in any of the several decisions implementing a contrary interpretation.

at 167, 411 A.2d at 750. Assuming, *arguendo*, that this Court would find that Dr. Burger's will failed to provide sufficient direction, Appellee contends that clause (11) of Section 2514 plainly mandates that the residuary gift would pass to the other residuary beneficiaries. In this regard, Appellee notes that the purpose of Pennsylvania's anti-lapse and void legacy statute is to prevent precisely what Appellant seeks to achieve, namely, a partial intestacy. Appellee observes that, in contravention of this legislative purpose, Appellant's interpretation would render the statute devoid of any provision addressing the disposition of lapsed and void residuary gifts, leaving a substantial, unexplained, and inexplicable gap in its coverage. Furthermore, Appellee contends that Appellant's construction would render clause (11) superfluous, since clause (10) already directs that a failed non-residuary bequest shall pass to the residuary beneficiaries. Like the orphan's court, Appellee views clause (11)'s cross-reference to clause (10) as merely incorporating the latter's broad enumeration of reasons why a bequest may fail. In conformity with the clause headings, the orphan's court's reading of the statute, and this Court's treatment of Section 2514's immediate predecessor, Appellee maintains that clause (10) governs the disposition of lapsed or void non-residuary devises or bequests, and clause (11) governs the disposition of lapsed/void residuary devises or bequests.

■ As the Superior Court observed, appellate review of the legal question concerning whether the orphan's court properly sustained the demurrer is plenary.[6]

As noted, in finding a reasonably clear manifestation of Dr. Burger's intent for an alternative disposition of his residuary bequest to Appellee in the event of its failure on account of undue influence, the Superior Court relied on Dr. Burger's specification of a substitute residuary bequest in the event of

6. Appellant has couched her arguments entirely in terms of her interpretation of Dr. Burger's will and Section 2514; she has not otherwise asserted that she was entitled to an evidentiary hearing relative to the standing inquiry. Therefore, our review is directed exclusively to the legal questions presented.

Appellee's death. Such approach, however, is in substantial tension with holdings of this Court to the effect that a circumstance-specific, alternative bequest is not, in and of itself, sufficient to support a substitute gift occasioned by a different circumstance, at least in the absence of some additional presumption. *See, e.g., Berger's Estate,* 360 Pa. at 371, 61 A.2d at 857 ("[W]here the testator had thus failed to make provision for a contingency which actually happened, or to cover circumstances which subsequently resulted, a decree of intestacy [is] unavoidable." (quoting *Verner's Estate,* 358 Pa. at 285, 56 A.2d at 670)); [7] *Filbert's Estate,* 195 Pa. 295, 299, 45 A. 733, 734–35 (1900) (characterizing as "entirely inapplicable" provisions of a testator for contingencies that never occurred); *cf. Estate of Corbett,* 430 Pa. at 62 n. 8, 241 A.2d at 528 n. 8 ("[T]he mere fact that the testatrix made specific provision that certain legacies ... would lapse did not demonstrate an intent that legacies not covered by the statute would not lapse.... [I]t would be conjecture to assume that by providing for lapse in some bequests, testatrix therefore intended that other bequests should not lapse.") (citing *In re McFerren Estate,* 365 Pa. 490, 76 A.2d 759 (1950)). In light of this line of cases, the Superior Court's reasoning cannot be justified as an authorized finding of intention based upon a directed examination of Dr. Burger's will as viewed in light of the surrounding circumstances.[8] Rather, we believe that the court implement-

7. For the reasons previously stated, we find the Superior Court's reasons for distinguishing *Berger's Estate* to have been ineffective. *See supra* note 3. Since, however, *Berger's Estate* makes no mention of the then-prevailing anti-lapse and void legacy statute, we do not find it controlling with regard to the significance of such statute.

8. The decision cited by the Superior Court in articulating its holding, *Estate of Kehler,* does indicate that reasonable certainty, as opposed to express prescription, is the appropriate criterion in assessing whether a will manifests a sufficient intention to avoid application of the anti-lapse and void legacy provisions of Section 2514. *See Estate of Kehler,* 488 Pa. at 167, 411 A.2d at 750. Nevertheless, in applying the reasonable certainty standard to the facts of the case, involving a testator's failure to make an express statement concerning his intended disposition of residue in the event of a named beneficiary's death, the *Estate of Kehler* Court concluded that, despite the inclusion of an express survivorship provision in the residuary clause, the testator's intent was not sufficiently specific to avoid the application of Section 2514. *See id.*

ed a presumption concerning Dr. Burger's intention relative to an unforeseen (or at least unaddressed) circumstance, as gleaned from the testamentary document.

We do not regard this presumption as necessarily unreasonable; indeed, the result of its application (a substitute gift to the other residuary beneficiaries) is precisely the same as the result obtaining upon applying the presumption of clause (11) of Section 2514 as its language has been interpreted in prior decisions of this Court, *see supra* note 5, by the orphan's court, and by Appellee herein. Rather, for present purposes, it is sufficient merely to recognize that a judicial presumption was employed. With the understanding that there is enough of a gap or an ambiguity in Dr. Burger's will to require resort to this sort of a presumption, the relevance of Section 2514 becomes clear, since the arena of such presumptions is precisely that which the Legislature sought to occupy with the enactment of Pennsylvania's anti-lapse and void legacies statute. Significantly, in this arena, there is substantial room for disagreement as to what presumptions are most appropriate.[9] Indeed, when a testamentary instrument fails to provide for a contingency, some find it most reasonable merely to assume that the testator simply did not anticipate its happening. *See, e.g.,* Roberts, *Lapse Statutes: Recurring Construction Prob-*

The decision has been repeatedly referenced as embodying a minority position that elevates the threshold for reasonable certainty and enhances the effect of the relevant anti-lapse and void legacy statute, as opposed to diminishing it. *See, e.g.,* Patricia J. Roberts, *Lapse Statutes: Recurring Construction Problems,* 37 EMORY L.J. 323, 351–52 (1988).

9. *See generally In re Estate of McFarland,* 167 S.W.3d 299, 305 (Tenn. 2005) (finding it "just as likely" in the event of a failed residuary bequest, that a testator would have considered a devolution to the heirs of the residuary beneficiary as opposed to a substitute gift enhancing the shares of the other residuary legatees); Susan B. French, *Antilapse Statutes Are Blunt Instruments: A Blueprint for Reform,* 37 HASTINGS L.J. 335, 335 (1985) ("Any mechanical rule for the disposition of a lapse in the residue—whether it be by the common law in favor of intestacy or, oppositely, leading to survivorship, or by statutory provision—is, standing alone, likely to be quite arbitrary."); *cf.* Roberts, *Lapse Statutes: Recurring Construction Problems,* 37 EMORY L.J. at 348 (observing that "lapse statutes are designed to reflect average intent, but since the statutes vary significantly and since a testator's intent can differ from the average, it is inevitable that cases will arise where the application of a lapse statute would be contrary to intent").

*lems*, 37 EMORY L.J. at 346–47.[10]  Given this and other difficulties associated with presumptions of this kind, we find it most appropriate *to adhere to the direction of the representative branch of government, where it is available.*  Moreover, the interests of justice are better served by implementing pre-existing, legislatively prescribed rules of interpretation that were available to the testator for consideration at the time that the will was drafted, as opposed to crafting subsequent, judicial presumptions that are independent of the statute.

In summary, we hold that the Superior Court erred in finding that Dr. Burger's specification of a substitute residuary gift in the event of Appellee's death was, in and of itself, a sufficient manifestation of his intentions in the event of a failure of the residuary bequest on account of undue influence to preclude application of the presumptions delineated in Section 2514.  Therefore, we proceed to resolve the dispute as to the meaning of the relevant provisions of the anti-lapse and void legacy statute.

As noted, Appellant's approach to the opening phrase of clause (11) of Section 2514 is a literally correct one.  Since the clause at the outset purports to pertain to "a devise or bequest as described in clause (10)," facially, it appears to address only the lapsed and void special devises and legacies that comprise clause 10's subject matter.  *See* 20 Pa.C.S. § 2514(10).  This interpretation, however, is in tension with several of the words that follow.  For example, clause (11)'s reference to a "devise or bequest as described in clause (10)" is qualified by subsequent words of limitation restricting the subject matter to devises and bequests which "shall be included in a residuary clause of the will."  By definition, however, the specific devises

10.  Were this a contest between the heirs of a named residuary legatee and the other residuary beneficiaries occasioned by the failure of a residuary bequest based on some occurrence that would undermine the gift to the named residuary legatee but not his heirs, the judicial presumption implemented by the Superior Court would assume heightened significance.  In such circumstance, the disposition directed by the Superior Court to the other residuary beneficiaries based upon a judicial presumption would be directly contrary to the legislative presumption, under clause (9) of Section 2514, of a substitute gift in favor of the heirs of the named residuary legatee.  *See supra* note 2.

and bequests that are the subject matter of clause (10) are those "not being part of the residuary estate." [11] Additionally, in the event of a relevant lapse or invalidity, clause (11) provides for a substitute gift to "the *other* residuary devisees or legatees," 20 Pa.C.S. § 2514(11) (emphasis added), suggesting that the Legislature contemplated a situation in which the gift to at least one residuary beneficiary has been thwarted. Under Appellant's interpretation, however, it is only the beneficiary of a particular devise or bequest who necessarily will have been displaced.

These apparent inconsistencies in Section 2514(11) foster ambiguity, and the application of prevailing principles of statutory construction is therefore appropriate. *See Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). Of these, we find it most relevant here to bear in mind the principle of liberal construction to promote the remedial statute's objects, *see* 1 Pa.C.S. § 1928(c); the authorization to consider the occasion and necessity for the statute, the mischief to be remedied, the consequences of a particular interpretation, and former laws, *see* 1 Pa.C.S. § 1921; and the latitude to consider that headings included by the General Assembly as an aid, *see* 1 Pa.C.S. § 1924.

Anti-lapse and void legacy statutes represent a legislative effort to advance the policy against intestacy that evolved in the common law. *See generally* 80 Am.Jur.2d Wills § 1445 (2005). Appellant concedes that a predecessor statute to Section 2514 reflected the Legislature's attempt to implement a fairly comprehensive set of presumptions across the range from particular to residuary devices and bequests.[12] This

11. Appellant's view appears to be that the requirement for the gifts covered by clause (11) to be included within the residuary clause of the will merely reflects a legislative conception that lapsed or void particular devises or legacies would fall within the residuary by operation of clause (10) upon lapse or invalidation of the gift. Since, however, the statute speaks directly to the subject matter of the actual "residuary *clause,*" 20 Pa.C.S. § 2514(11) (emphasis added), Appellant's view does not reflect the same literal approach to the statute that she seeks to have applied to another of its parts.

12. As noted, Subsections (10) and (11) are a re-enactment of Subsections (9) and (10) of Section 14 of the Wills Act of 1947; these

approach is consistent with that which prevails in most juris-
dictions; indeed, to the extent that Section 2514(11) is read
(consistent with its heading, the bulk of its body, and the
policy that it serves), as directing a presumption of intent
relative to lapsed residuary gifts, it is in harmony with the
comprehensive scheme of void legacy presumptions that are
recommended under the Uniform Probate Code.[13] *Accord* 80
AM.JUR.2D WILLS § 1037 (2005) ("The presumption against an
intestacy is particularly strong where the subject of the gift is
the residuary estate."). In this landscape, it seems unlikely
that, in revising and codifying the anti-lapse and void legacy
provisions within Section 2514, the Legislature intended to
effect a substantial retreat by eliminating the presumption
applicable to residuary devises and bequests. Indeed, as to
such gifts, in material respects Section 2514(11) closely tracks
the specific language of the Uniform Probate Code which
prevailed at the time of its enactment. *Compare* UNIFORM
PROBATE CODE § 2–606 (1969) (indicating that, upon failure of a
residuary gift not addressed by the anti-lapse provision favor-
ing the heirs of the designated beneficiary, the "share passes
to the other residuary devisee, or to other residuary devisees
in proportion to their interests in the residue"), *with* 20
Pa.C.S. § 2514(11) ("it shall pass to the other residuary devi-

supplanted Section 15(c) of the Wills Act of 1917, Act of June 7, 1915,
P.L. 403 (superseded). Appellant acknowledges that she would have no
interest in the outcome of the present will contest if the presumption as
directed in Section 15(c) were to be applied to Dr. Burger's will. *See*
Brief of Appellant at 24 (citing *In re Armstrong's Estate*, 347 Pa. 23, 25–
26, 31 A.2d 528, 529 (1943) (holding that under Section 15(c) lapsed
residuary gifts fell to the remaining residuary beneficiary); *In re Mor-
gan's Estate*, 340 Pa. 465, 467, 17 A.2d 454, 455 (1941) (same)).

**13.** The Uniform Probate Code directs, subject to an exception favoring
the devisee's or legatee's heirs that is analogous to clause (9) of Section
2514, *see supra* note 2, that "if the residue is devised to two or more
persons, the share of a residuary devisee that fails for any reason passes
to the other residuary devisee, or to the other residuary devisees in
proportion to the interest of each in the remaining part of the residue."
*See* UNIFORM PROBATE CODE § 2–604 (1990). The version prevailing as of
the time of the enactment of Section 2514 was substantively identical.
*See* UNIFORM PROBATE CODE § 2–606 (1969). Notably, a similar result has
obtained under common law decisions in some jurisdictions, even in
the absence of a statutory prescription. *See, e.g., Commerce Nat. Bank
v. Browning*, 158 Ohio St. 54, 107 N.E.2d 120 (Ohio 1952).

sees or legatees, if any there be, in proportion to their respective shares or interests in the residue").[14]

Consistent with the above, the clause headings, and this Court's prior decisions, *see supra* note 5, we believe that it is reasonably clear that the General Assembly intended clause (11) to supply the presumption that should be applied to lapsed and failed residuary devises and bequests not otherwise addressed under the presumption favoring the heirs of the named beneficiary, *see supra* note 2, in the absence of reasonable certainty concerning the testator's intent derived from the will instrument and surrounding circumstances. Like the orphan's court, we therefore understand clause (11)'s cross-reference to clause (10) to refer to the various circumstances that may give rise to a lapse or failure of a residuary gift. Hence, absent some factor or factors not presently before the Court, clause (11)'s presumption would govern in the event of a partial failure of Dr. Burger's will on account of undue influence attributable to Appellee, and Appellee's fifty-percent share of the residue would be directed as a substitute gift to the other residuary beneficiaries, not to Appellant as an intestate heir.

**14.** Appellant also contends that, as between clauses (10) and (11) of Section 2514, only clause (11) actually directs the disposition of a lapsed or void residuary devise or bequest, since clause (10) merely indicates that the devise or bequest "shall be included in the residuary[,]" 20 Pa.C.S. § 2514(10). *See* Brief for Appellant at 24–25 (contending that "Subsection (10) does not direct how the failed or void bequests are to be distributed"). The language of clause (10), however, is also directly parallel to Section 2–604 of the Uniform Probate Code (formerly Section 2–606 in the pre–1990 version). *See* Uniform Probate Code § 2–604(a) (1990) ("Except as provided in [the anti-lapse provision favoring the heirs of the devisee or legatee], a devise, other than a residuary devise, that fails for any reason becomes a part of the residue."). The difference in phraseology as between clauses (10) and (11), as well as their counterparts in the Uniform Probate Code, is apparently accounted for by the fact that the subject matter of clause (11) requires some additional elaboration pertinent to the treatment of the residue, since the express residuary scheme will have been disrupted. Moreover, clause (10) is phrased in substantially the same manner as the common law formulation of the relevant presumption, which this Court has understood to direct a disposition for the property. *See supra* note 1.

Accordingly, the orphan's court did not err in finding that Appellant lacked standing to pursue a will contest, in light of the arguments that have been preserved to be addressed here.

The order of the Superior Court is affirmed.

Chief Justice CAPPY, Justice CASTILLE, and Justice BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice EAKIN files a concurring opinion in which Justice NEWMAN joins.

Justice EAKIN, concurs

I concur with the majority that appellant does not have standing to challenge this part of Dr. Burger's will, but write separately as my conclusion is based on Dr. Burger's intent, not the statutes cited.

The anti-lapse statutes only control "in the absence of a contrary intent discernable from [the] will." Majority Op., at 169, 898 A.2d at 549. That is, if we can discern the testator's intent, there is no lapse and the statutes do not come into play. The intent must appear with reasonable certainty. *Estate of Kehler*, 488 Pa. 165, 411 A.2d 748, 750 (1980); *see also* 20 Pa.C.S. § 2514 ("In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with [the rules of interpretation].").  As I find Dr. Burger's intent is determinable with reasonable certainty, I find no need to delve into the legislature's intent by interpreting § 2514. The intent of the testator here is at least as clear as the intent of the legislature in the clauses (10) and (11) of § 2514.[1]

1. While the majority provides an appealing interpretation of these clauses, clause (11) begins with the qualifying statement that it applies to a residuary "devise or bequest as described in clause (10)." 20 Pa.C.S. § 2514(11). Whatever the legislature's intent, what it *meant* to do with this statute must give way to what it *did* do with it, and that was to limit clause (11)'s applicability to a situation not present here.

What would Burger have done, had he known this bequest would fail because of undue influence? That he did not provide for this contingency is certainly understandable, for no one writes their will believing they are under the undue influence of another; hence, there is no reason to believe Dr. Burger would specifically address a situation he could not have believed was of moment. His intent is discernable, however, in this will and in the prior wills. The observable conclusion is his intent to have a bequest that fails for other reasons inure to the benefit of the named objects of his munificence, the residuary beneficiaries.

Clarity of intent is not controlling if that intent was the product of the very factor allegedly rendering it uncontrolling, namely, undue influence. That is, if the actual intent is the result of undue influence, can we ever determine the unfettered intent of the testator? It is tempting to suggest that where the allegation is undue influence, intent cannot be determined without the opportunity to prove there was inappropriate influence; if proved, the testator's uninfluenced intent is unknowable, and hence the bequest must lapse, the argument goes.

However, the challenge here is only to the modifications which gave appellee an increased share. Appellant does not challenge her inclusion as a residuary beneficiary, nor Dr. Burger's capacity to provide for her in that way. Looking at the prior wills, where no undue influence was claimed, we see consistent inclusion of appellee, who was involved with decedent's care in his waning years. He consistently provided for appellee, and he consistently chose not to provide for appellant or other intestate heirs.

We see disposition of the bequest should it lapse for reason of predecease, a possibility within the expected contemplation of a testator. That disposition is not enumerated for lapse due to undue influence is unsurprising, and as the Superior Court astutely noted, there is no reason to think testator wished a different disposition should the bequest fail for reasons other than predecease. I agree with the Superior Court that "if a bequest fails ... and an alternative disposition

is specified, we cannot presume that had the bequest failed for a different reason the testator's intent for the descent of the property to someone else would change." *In re Estate of Burger*, 852 A.2d 385, 390 (Pa.Super.2004).

That is, Dr. Burger provided that if appellee predeceased him, the entire share would go to other residuary beneficiaries. If a portion of her share was denied her, what disposition would Dr. Burger have desired? Is there any reason to believe he would want anything inconsistent with the disposition he provided in the event of her predecease? I see none. In fact, any beneficiary could forfeit his or her right to a bequest by failing to attend Dr. Burger's funeral (Paragraph 16 of the will)—the result of this forfeiture is that the bequest falls into the residuary. If he meant for this to happen upon someone's failure to attend his funeral, or upon their death, is it any stretch at all to believe he intended that result for any happenstance affecting the share of the predeceased or offending beneficiary?

I would hold it is reasonably certain that Dr. Burger intended his residuary bequest to appellee, or any portion of it, to pass to the other residuary beneficiaries in the event it failed because of any reason, including undue influence.

Justice NEWMAN joins this concurring opinion.