# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Bette Ann Belleville, h/w :
:
v. : No. 953 C.D. 2017
: Submitted: March 15, 2019
David Cutler Group, Inc. and Malvern :
Hunt Homeowners Association :
:
Appeal of: David Cutler Group, Inc. :
:
William and Bette Ann Belleville, h/w :
:
v. : No. 1020 C.D. 2017
: Submitted: March 15, 2019
David Cutler Group, Inc., and Malvern :
Hunt Homeowners Association :
:
Appeal of: William and Bette Ann :
Belleville, h/w :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED: June 28, 2019**

In these consolidated cross-appeals, Appellant David Cutler Group, Inc. (Cutler) and Appellees William and Bette Ann Belleville (the Bellevilles)[1] appeal from an order of the Court of Common Pleas of Chester County (trial court), dated June 13, 2017. After determining that the Bellevilles were entitled to an award of punitive damages and attorneys' fees payable from Cutler and conducting a

---

[1] This Court had previously designated Cutler as appellant and the Bellevilles as appellees pursuant to Pennsylvania Rule of Civil Procedure 2136.

hearing to determine the amount of such awards, the trial court ordered Cutler to pay the Bellevilles $100,000 in punitive damages and $212,895 in attorneys' fees. For the reasons set forth below, we affirm in part, vacate in part, and remand for further action by the trial court.

## I. BACKGROUND

To fully understand how this matter is presently before the Court, a summary of the facts and procedural history from our decision in *Belleville v. David Cutler Group*, 118 A.3d 1184 (Pa. Cmwlth. 2015) (*Belleville I*), is helpful:

> [Cutler] was the developer of a planned community known as Malvern Hunt (the Development), which consists of 279 properties and was subdivided into [3] communities: The Reserve, The Chase, and The Ridings. The Reserve consists of 101 minimum-maintenance single[-]family lots, The Chase consists of 95 carriage homes, and The Ridings consists of 83 standard single-family units. Open spaces and amenities, including tennis courts and [2] playgrounds, are owned and maintained by the [Malvern Hunt Homeowners Association (Association)]. [The Bellevilles] own property in The Ridings.
>
> Membership in the Association consists of the 196 lot owners of The Chase and The Reserve. The Bellevilles and the other 82 residents of The Ridings are excluded from membership in the Association.
>
> Per the requirements for creating a planned community under the Uniform Planned Community Act (UPCA), [68 Pa. C.S. §§ 5101-5414,] Cutler filed a Declaration with the Office of the Recorder of Deeds for Chester County (Chester County Recorder of Deeds) on March 20, 2001 (the Recorded Declaration). The Recorded Declaration provided that only members of the Association (*i.e.*, owners in The Chase and The Reserve) received snow removal services for their sidewalks and driveways, grass-cutting services, weed treatments and mulching services. The owners in The Ridings received

2

no services from the Association and were responsible for all aspects of their own property maintenance.

The Recorded Declaration also provided that "[The Ridings] shall be exempt from all assessments, charges or liens" except for a $1,000 contribution at the time of conveyance. Furthermore, the Recorded Declaration provided that, outside of the $1,000 lump sum payment made at the time of conveyance, "[n]o other terms or provisions of Article IV [(pertaining to maintenance assessments)] shall apply" to The Ridings. The Recorded Declaration also prohibited the Association from making amendments to the Recorded Declaration that impose any further monetary obligation on owners in The Ridings.

The Bellevilles purchased their home in August 2001, [5] months after the Recorded Declaration was recorded. The Bellevilles, however, did not receive a copy of the Recorded Declaration. Instead, Cutler provided the Bellevilles with a declaration that had not been recorded (Unrecorded Declaration), which contained different language than the Recorded Declaration. Specifically, the Unrecorded Declaration required residents of The Ridings to pay a one-time $1,000 contribution to the Association plus an annual assessment of 20% of the uniform assessment paid by the owners of The Chase and The Reserve. Cutler provided the Bellevilles with a summary of the Unrecorded Declaration (Summary), which provide[d], in pertinent part:

> 1. The open space and amenities within same as depicted on the approved subdivision plan for all of [the Development], which includes [The Chase], [The Reserve] and [The Ridings,] is available for the use and enjoyment of the owners of lots and dwelling units in all [3] such areas.
>
> . . . .
>
> 3. The [Ridings] are intended to be owned and enjoyed without the Association providing any services with regard to snow removal, lawn mowing or any other type of lot maintenance. In short, [The Ridings] are

3

afforded the use and enjoyment of the Common Open Space, but the owners of these lots are <u>not</u> members of the [Association] never to be assessed for use and enjoyment of the open space or in any other matter impacted by the operation of the Association.

4. Each [lot located within The Ridings] will have contributed $1,000.00 toward the Association funds, as a one time only contribution upon settlement between [Cutler] and the initial buyer of each [lot]. It shall be this sum, <u>in concert with the percentage payment of the annual assessment as set forth hereinbelow</u>, which will be the contribution towards use, enjoyment and maintenance of the Common Open Space, without any further financial obligation upon [the lots located within The Ridings]. <u>Article XI provides that each [lot owner in The Ridings] shall pay a sum equal to twenty percent (20%) of the annual assessment as established by the Association and applicable to all other types of lot owners being those within [The Chase] and [The Reserve], which annual sum shall be the sole financial obligation upon [the lot owners in The Ridings] with regard to the use, enjoyment and maintenance of the Common Open Space and Association Facilities, without any further financial obligation upon [The Ridings].</u> Moreover, the Declaration, at Article X, Section 1, expressly prohibits any future amendments to the Declaration that could affect the rights of the [lot owners in The Ridings] or impose any financial obligation above and beyond the initial $1,000.00 contribution <u>and the annual payment equal to twenty (20%) percent of the standard annual assessment as imposed by the Association on all other Lot Owners.</u>

4

In reliance on the Unrecorded Declaration provided to them, the Bellevilles paid the 20% annual assessment.

More than [2] years later, in October 2003, Cutler filed and recorded with the Chester County Recorder of Deeds a First Amendment to the Recorded Declaration (First Amendment) to "clarify" that property owners in The Ridings were to pay an annual 20% assessment. Notably, the First Amendment also, for the first time, indicate[d] that owners in The Chase and The Reserve may be charged differing annual assessments. The Recorded Declaration and Unrecorded Declaration both state, in Article IV, Section 3, that the annual assessment "shall be fixed at a uniform rate for all Lots." The Bellevilles and other homeowners in the Development were not notified of the First Amendment or provided with a copy.

In 2006, the Association took control of the Development from Cutler in accordance with Article II, Section 2 of the Recorded Declaration. On August 15, 2007, the Association filed a Second Amendment to the Recorded Declaration, allegedly to cure an ambiguity as it related to a budget shortfall (Second Amendment).

On May 7, 2008, the Association recorded a Third Amendment to the Recorded Declaration, allegedly to cure an ambiguity regarding the collection of late fees, interest[], costs, and attorney fees related to the non-payment of annual assessments (Third Amendment). In January 2008, the Association sent the Bellevilles an assessment notice that was calculated differently from all previous invoices. The 2008 assessment used a two-tiered format for owners in The Chase and The Reserve, and charged owners in The Ridings 20% of the higher amount. The Bellevilles disputed the calculation using the two-tiered system as unauthorized by the [Recorded] Declaration. The Bellevilles first learned of the amendments to the Recorded Declaration during the dispute, when the Association used the amendments to justify the higher assessment.

Unable to resolve their dispute with the Association, and believing that they had been wrongfully assessed under the terms of the Recorded Declaration, the

5

Bellevilles filed a complaint on December 3, 2008, against Cutler and the Association, seeking declaratory judgment and compensatory and punitive damages. In Counts I through VI, the Bellevilles asked the trial court to "declare null and void" the First and Third Amendments. They argued that the First and Third Amendments were recorded without notice to any owner within the Development and without consent as required by Section 5219(d) of the UPCA, 68 Pa. C.S. § 5219(d), and in violation of the terms of Article X, Section 1 of the Recorded Declaration, which required 90 day[s] advance written notice to all [o]wners of any amendments and prohibited any changes which "affect solely the rights and provisions as appl[ied] to [The Ridings] . . . or which would in any manner impose any financial obligation upon [the lot owners in The Ridings] above and beyond those set forth [in the Recorded Declaration]." In Count VII, the Bellevilles sought a refund from Cutler and the Association for the allegedly illegal annual assessments they collected from the Bellevilles. In Count VIII, the Bellevilles sought punitive damages from Cutler for "intentionally deceitful" conduct.

Cutler and the Association filed preliminary objections asserting, among other things, that the Bellevilles' claim as to the First Amendment was time barred under Section 5219(b) of the UPCA. On March 7, 2012, the trial court granted the preliminary objections in part, dismissing the Bellevilles' claims as to the First Amendment. Thereafter, the Bellevilles filed a motion to reconsider the March 7, 2012 order, which the trial court granted on April 30, 2012, vacating its March 7, 2012 order. The Association filed a motion to reconsider the April 30, 2012 order, which the trial court denied on May 24, 2012.

Prior to trial, Cutler filed a motion to dismiss the Bellevilles' cause of action for declaratory relief due to lack of jurisdiction for failure to join indispensable parties, namely the other 278 property owners in the Development. The trial court reserved its ruling until after the trial. A nonjury trial was held on October 16, 2012. On October 31, 2012, without ruling on the merits of the case, the trial court dismissed the Bellevilles' complaint in its

6

entirety for failure to join indispensable parties. On appeal to this Court, the Bellevilles challenged only the trial court's dismissal of their causes of action seeking declaratory relief. By order dated January 3, 2014, we vacated the trial court's October 31, 2012 order, holding that the other 278 owners were not indispensable parties, and remanded the matter to the trial court for proceedings consistent with our opinion.

On remand, the trial court, citing footnote 10 of this Court's [January 3, 2014] opinion, considered only the declaratory judgment counts—*i.e.*, whether the First and Third Amendments were valid. In an opinion dated July 29, 2014, the trial court concluded that the First Amendment was not valid. It concluded that the Recorded Declaration was not ambiguous, and the First Amendment, therefore, could not be made as a technical correction under Section 5219(f) of the UPCA. The trial court further concluded that the Association violated Section 5219(f) by failing to obtain an independent legal opinion, and that the First Amendment [both] violated Section 5219(d) [of the UPCA] and . . . contradicted Article IV, Section 3 and Article X, Section 1 of the Recorded Declaration. The trial court likewise concluded that the Third Amendment was invalid because the Association failed to obtain an independent legal opinion in violation of Section 5219(f), [and that] the [Third Amendment both] violated Section 5219(d)[] and . . . contradicted Article IV, Section 10 and Article X, Section 1 of the Recorded Declaration. The trial court's order, therefore, declared the First and Third Amendments void and stricken and allowed any party to record a copy of the July 29, 2014 order with the Chester County Recorder of Deeds.

*Belleville I*, 118 A.3d at 1187-92 (footnotes omitted) (record citations omitted) (headings omitted).

The Association and the Bellevilles cross-appealed the trial court's order to this Court. The Association's main argument on the merits was that the trial court committed an error of law by concluding that the First and Third Amendments

were invalid. More specifically, the Association argued that Cutler and the Association properly amended the Recorded Declaration in accordance with Section 5219(f) of the UPCA[2] because the First and Third Amendments constituted technical amendments that Cutler and the Association made to clarify an ambiguity in the Recorded Declaration. We concluded that the Recorded Declaration was not ambiguous, and, therefore, Cutler and the Association could not amend it under Section 5219(f) of the UPCA. We also agreed with the trial court that, even if an ambiguity existed in the Recorded Declaration, the First and Third Amendments were procedurally invalid as technical corrections, because Cutler and the Association failed to obtain the necessary "opinion from independent legal counsel" as required by Section 5219(f) of the UPCA. In their cross-appeal, the Bellevilles

---

[2] At the time the First Amendment was filed and recorded in October 2003, Section 5219(f) of the UPCA provided:

> Technical corrections.—Except as otherwise provided in the declaration, if any amendment to the declaration is necessary in the judgment of the executive board to do any of the following:
>
>> (1) cure an ambiguity;
>>
>> (2) correct or supplement any provision of the declaration, including the plats and plans, that is defective, missing or inconsistent with any other provision of the declaration or with this subpart; or
>>
>> (3) conform to the requirements of any agency or entity that has established national or regional standards with respect to loans secured by mortgages or deeds of trust or units in planned community or so-called "PUD" [(planned unit development)] projects, such as Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation;
>
> the executive board may effect an appropriate corrective amendment without the approval of the unit owners or the holders of liens on the planned community, upon receipt of an opinion from independent legal counsel to the effect that the proposed amendment is permitted by the terms of this subsection.

68 Pa. C.S. § 5219(f) (1996). Section 5219(f) of the UPCA has since been amended on multiple occasions and contains additional/different language.

8

argued, *inter alia*, that the trial court committed an error of law by concluding that they had waived their claim for damages. We concluded that our January 3, 2014 opinion and order reinstated the Bellevilles' claims for declaratory judgment and their ability to pursue any relief available and requested on such claims, regardless of how the Bellevilles characterized their request for remedies in their complaint. In so doing, we disagreed with the trial court's conclusion that the Bellevilles waived their claims for damages by only appealing the trial court's dismissal of their declaratory relief count and not their damages counts. As a result, we reversed the portion of the trial court's order finding waiver of the Bellevilles' request for relief in the form of damages and remanded the matter to the trial court to consider whether the Bellevilles were entitled to any such relief. We affirmed the trial court's order in all other respects.

On remand, the trial court relied on the record created during the nonjury trial held on October 16, 2012, and the findings of fact issued on July 29, 2014, to determine whether the Bellevilles were entitled to damages. By order dated February 19, 2016, the trial court awarded the Bellevilles compensatory damages in the amount of $1,000 plus interest payable from Cutler, which amount represented the $200 annual assessment paid by the Bellevilles to Cutler from 2001 through 2005. The trial court also awarded the Bellevilles punitive damages and attorneys' fees pursuant to Section 2503(7) of the Judicial Code[3] payable from Cutler in amounts to be determined following a hearing. By order dated November 21, 2016, the trial court, *inter alia*, indicated that, in connection with the Bellevilles' claim for attorneys' fees, it would not consider any attorneys' fees incurred by the Bellevilles before this action was pending, as part of the

---

[3] 42 Pa. C.S. § 2503(7).

9

Bellevilles' efforts to overturn the Second Amendment during this litigation, or during any appeal to this Court. Thereafter, on February 24, 2017, the trial court held a hearing for the parties to submit evidence that would enable the trial court to set the amount of punitive damages and attorneys' fees. On June 13, 2017, the trial court entered an order directing Cutler to pay the Bellevilles punitive damages in the amount of $100,000, and attorneys' fees in the amount of $212,895. Cutler and the Bellevilles cross-appealed the trial court's order to this Court.

## II. ARGUMENTS ON APPEAL

On appeal, Cutler argues that the trial court: (1) abused its discretion by holding Cutler liable to the Bellevilles for punitive damages; and (2) abused its discretion by awarding attorneys' fees to the Bellevilles as taxable costs under Section 2503(7) of the Judicial Code. In their cross-appeal, the Bellevilles argue that the trial court committed an error of law by failing to consider their claim for attorneys' fees incurred in connection with the prior appeals to this Court.

## III. DISCUSSION

### A. Punitive Damages

Cutler argues that the trial court abused its discretion by holding Cutler responsible to the Bellevilles for punitive damages. In making this argument, Cutler appears to suggest that its actions in connection with the recording of the First Amendment were not outrageous and, therefore, do not support an award of punitive damages because: (1) Cutler believed that the terms of the Recorded Declaration permitted it to file the First Amendment as a means to resolve the "mutual mistake" in recording the incorrect declaration; (2) Cutler never imposed the two-tiered assessment established by the First Amendment during the time that it was in control of the Association; and (3) Cutler realized no financial gain/profit from imposing

10

the $200 annual assessment on the lot owners in The Ridings. In other words, Cutler suggests that its state of mind at the time that it recorded the First Amendment does not support the imposition of punitive damages. Cutler also argues that, even though the trial court found that both Cutler and the Association "proceeded in the same manner in the recording of the First and Third Amendments," the trial court determined that only Cutler's actions warranted the imposition of punitive damages. (Cutler's Br. at 18.)

In response, the Bellevilles argue that the trial court did not abuse its discretion by awarding punitive damages because Cutler's actions in secretly changing the substantive terms of the Recorded Declaration by recording the First Amendment "were outrageous and done with reckless disregard for the rights of [the] Bellevilles and all others in the [Development]." (Bellevilles' Br. at 15.) The Bellevilles further argue that the trial court's distinction between Cutler and the Association relative to the imposition of punitive damages was appropriate because "the only substantive problem with the Third Amendment[—*i.e.*, the only reason for the Bellevilles' challenge to the Third Amendment—]was that it restated the First Amendment." (Bellevilles' Br. at 20.) The Bellevilles also argue that Cutler's appeal of the trial court's imposition of punitive damages "is nothing more than a request for reconsideration[,]" and Cutler has failed to cite anything in the record that "demonstrates any prejudice, bias, [or] ill-will by the trial court" that would establish that the trial court abused its discretion. (Bellevilles' Br. at 24.)

An "[a]ssessment of punitive damages [is] proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct and are awarded to punish that person for such conduct." *SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 704 (Pa. 1991) (internal citation

omitted). "In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause[,] and the wealth of the defendant." *Id.* (citing Section 908(2) of the Restatement (Second) of Torts as adopted by the Pennsylvania Supreme Court in *Feld v. Merriam*, 485 A.2d 742 (Pa. 1984)). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed [on appeal] so long as that discretion has not been abused." *Id.* at 705.

Here, the trial court concluded that the Bellevilles were entitled to an award of punitive damages against Cutler because Cutler's conduct was outrageous and demonstrated a reckless indifference to the rights of others. The trial court reasoned that, in order to correct Cutler's attorney's error in recording the incorrect declaration, Cutler secretly recorded the First Amendment all the while knowing that the First Amendment "was inconsistent with both the Recorded Declaration and the Unrecorded Declaration" and "materially changed the substantive rights and obligations of all unit owners in the [Development]." (Trial Ct. Op., Feb. 19, 2016, at 6, 8.) The trial court reasoned further that Cutler also knew that the First Amendment would not qualify as a technical amendment under Section 5219(f) of the UPCA, and that, even if it did, "the mandatory procedural steps required to make a technical amendment[—*i.e.*, obtaining the necessary 'opinion from independent legal counsel'—]had not been followed." (*Id.* at 9.) The trial court also reasoned that Cutler profited from the recording of the First Amendment and the collection of annual assessments from lot owners in The Ridings because "[e]very dollar that Cutler collected while in control of the [Development] was a dollar that Cutler did not have to spend since Cutler was responsible for the maintenance of the common

12

areas and facilities during [that] period." (*Id.* at 10.) The trial court further reasoned that it is irrelevant that Cutler did not impose the two-tiered assessment established by the First Amendment during the time that it was in control of the Association, because "Cutler set in motion the events that led to [such] assessment." (*Id.* at 11.) In addition, while Cutler suggests that its state of mind should have negated the imposition of punitive damages, Cutler ignores the fact that it did not present any evidence on what its state of mind was at the time that it recorded the First Amendment that the trial court could consider in making its decision on whether to impose punitive damages. Given the trial court's reasoning as outlined above, we cannot conclude that the trial court abused its discretion by holding Cutler responsible to the Bellevilles for punitive damages.

## B. Attorneys' Fees

Cutler argues that the trial court abused its discretion by awarding attorneys' fees to the Bellevilles as taxable costs under Section 2503(7) of the Judicial Code. More specifically, Cutler argues that the trial court failed "to arrive at any precise finding as to [any] dilatory, obdurate or vexatious conduct" and, instead, relied on Cutler's conduct that occurred prior to the commencement of this litigation as the basis to award attorneys' fees, which is improper. (Cutler's Br. at 25.) Cutler argues further that the docket activity in this case clearly reflects that it successfully defended against certain claims brought by the Bellevilles, including the Bellevilles' attempt to certify a class and Cutler's challenge to the trial court's jurisdiction based upon the Bellevilles' failure to join indispensable parties, and, therefore, its conduct in asserting these defenses could not have been dilatory, obdurate or vexatious. In response, the Bellevilles argue that the trial court did not abuse its discretion by awarding attorneys' fees, because such award was made in

13

connection with Cutler's conduct during the pendency of these proceedings—*i.e.*, Cutler's assertion of a frivolous defense.

In their cross-appeal, the Bellevilles argue that the trial court committed an error of law by failing to consider their claim for attorneys' fees incurred in connection with the prior appeals to this Court. More specifically, the Bellevilles argue that the attorneys' fees award should include the attorneys' fees incurred by the Bellevilles in connection with those appeals because they never should have occurred. In other words, the Bellevilles contend that this "case never should have proceeded beyond preliminary pleadings," and Cutler's frivolous defenses have perpetuated this matter for 9 years. (Bellevilles' Br. at 34.)

Section 2503(7) of the Judicial Code allows a trial court to award reasonable attorneys' fees to a party "as a sanction against another [party] for dilatory, obdurate or vexatious conduct during the pendency of the matter." 42 Pa. C.S. § 2503(7) "Vexatious conduct has been defined as that which is 'without sufficient grounds and serving only to cause annoyance.'" *Am. Mut. Liab. Ins. Co. v. Zion & Klein, P.A.*, 489 A.2d 259, 261 (Pa. Super. 1985) (quoting *Chervenak, Keane & Co., Inc. (C.K.C. Assocs.) v. Hotel Rittenhouse Assocs., Inc.*, 477 A.2d 487, 490 (Pa. Super. 1984)).[4] "Generally speaking, 'obdurate' conduct may be defined in this context as 'stubbornly persistent in wrongdoing.'" *In re Estate of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004) (quoting Webster's Ninth New Collegiate Dictionary 815 (1987)), *aff'd*, 898 A.2d 547 (Pa. 2006). A trial court's decision to award attorneys' fees under Section 2503(7) of the Judicial Code will not be overturned on appeal absent an abuse of discretion. *F. Zacherl, Inc. v. Flaherty*

---

[4] Although not binding on this Court, Pennsylvania Superior Court decisions may be cited for their persuasive value when they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

14

*Mech. Contractors, LLC*, 131 A.3d 1030, 1041 n.12 (Pa. Cmwlth.), *appeal denied*, 145 A.3d 729 (Pa. 2016).

Here, the trial court concluded that Cutler's conduct during the pendency of this litigation was obdurate and vexatious because Cutler essentially advanced a frivolous defense to the merits of the Bellevilles' claims. The trial court reasoned:

> Cutler defended this action claiming that the First Amendment was recorded as a technical correction pursuant to [Section 5219(f) of the UPCA] knowing that the First Amendment was not a technical correction, that any claim for a technical correction would be defeated because it was procedurally invalid, and that it had secretly recorded a document that materially affected the substantive rights and obligations of every [lot] owner in [the Development]. Because the same attorney who represented Cutler throughout this litigation also represented Cutler when the Recorded Declaration and First Amendment were recorded, Cutler was fully aware of all relevant circumstances at the time the litigation was commenced.

(Trial Ct. Op., Feb. 19, 2016, at 15.) The trial court further concluded that every task undertaken by the Bellevilles' attorneys, except for those undertaken before this action was pending, as part of the Bellevilles' efforts to overturn the Second Amendment during this litigation, or during any appeal to this Court, were "precipitated by Cutler's misconduct." (Trial Ct. Op., June 13, 2017, at 3.) Ultimately, the trial court awarded attorneys' fees for 473.1 hours of the Bellevilles' attorneys' time at a rate of $450 per hour for a total attorneys' fees award of $212,895.

Based on our review of the trial court's decision, we find no abuse of discretion with respect to the trial court's conclusion that Cutler's advancement of a frivolous defense on the merits constituted obdurate and vexatious conduct

15

warranting an award of attorneys' fees under Section 2503(7) of the Judicial Code. The facts as found by the trial court support a conclusion that Cutler stubbornly persisted in its advancement of a frivolous defense on the merits without sufficient grounds, especially considering the fact that Cutler did not present any evidence at the time of the nonjury trial held on October 16, 2012. *See In re Estate of Burger*, 852 A.2d at 391; *Am. Mut. Liab. Ins. Co.*, 489 A.2d at 261.

We do, however, find that the trial court abused its discretion by awarding attorneys' fees to the Bellevilles for each and every task—except those previously excluded from consideration—that the Bellevilles' attorneys undertook during these proceedings. While Cutler may have advanced a frivolous defense on the merits, Cutler successfully asserted valid procedural/non-merit based defenses throughout this litigation that altered the course of these proceedings. Cutler cannot be held responsible for the Bellevilles' attorneys' fees in connection with its successful assertion of any of these defenses. For these reasons, we cannot conclude that the trial court abused its discretion by concluding that the Bellevilles were entitled to an award of attorneys' fees as taxable costs against Cutler under Section 2503(7) of the Judicial Code. We must, however, conclude that the trial court abused its discretion by awarding attorneys' fees in the amount of $212,895 for each and every task undertaken by the Bellevilles' attorneys during these proceedings, except for those as previously excluded from consideration by the trial court. For these same reasons, we must also conclude that the trial court did not commit an error of law by failing to consider the Bellevilles' claim for attorneys' fees incurred in connection with the prior appeals to this Court.[5]

---

[5] In the first appeal to this Court, the Bellevilles appealed the trial court's dismissal of their complaint for failure to join indispensable parties. Although the Bellevilles were successful in

16

## IV. CONCLUSION

Accordingly, we affirm the trial court's order with respect to the award of punitive damages, we vacate the trial court's order with respect to the award of attorneys' fees, and we remand the matter to the trial court for further refinement of the amount of attorneys' fees to be awarded to the Bellevilles as taxable costs under Section 2503(7) of the Judicial Code. On remand, the trial court is directed to exclude from its award of attorneys' fees any and all attorneys' fees incurred by the Bellevilles in connection with Cutler's successful assertion of any procedural/non-merit based defenses during this litigation, which shall include, but not necessarily be limited to, those attorneys' fees incurred in connection with the Bellevilles' motion for class certification, Cutler's preliminary objections to the Bellevilles' complaint, Cutler's motion to dismiss for failure to join an indispensable party, and the prior appeals to this Court.[6]



P. KEVIN BROBSON, Judge

---

their appeal to this Court, Cutler cannot be held responsible for the payment of the Bellevilles' attorneys' fees in connection with an appeal of a ruling that was made by the trial court in favor of Cutler. Likewise, in the second appeal to this Court, the Association and the Bellevilles cross-appealed the trial court's decision declaring the First and Third Amendments void and stricken and concluding that the Bellevilles had waived their claim for damages. Again, even though the Bellevilles may have prevailed on appeal, Cutler cannot be held responsible for the payment of the Bellevilles' attorneys' fees in connection with an appeal that was not brought by Cutler and in which Cutler did not participate.

[6] In their brief to this Court, the Bellevilles request that this Court award them attorneys' fees in connection with this appeal because Cutler's appeal is frivolous. Given our disposition above and the fact that Cutler is partially successful in this appeal, Cutler's appeal is not frivolous, and, therefore, we decline to grant the Bellevilles' request.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Bette Ann Belleville, h/w  :
                             :
          v.                :   No. 953 C.D. 2017
                             :

David Cutler Group, Inc. and Malvern  :
Hunt Homeowners Association  :
                             :

Appeal of:  David Cutler Group, Inc.  :
                             :

William and Bette Ann Belleville, h/w  :
                             :
          v.                :   No. 1020 C.D. 2017
                             :

David Cutler Group, Inc., and Malvern  :
Hunt Homeowners Association  :
                             :

Appeal of:  William and Bette Ann  :
Belleville, h/w  :

# **O R D E R**

AND NOW, this 28th day of June, 2019, the order of the Court of Common Pleas of Chester County (trial court) is hereby AFFIRMED to the extent it awarded punitive damages and VACATED to the extent it awarded attorneys' fees, and the matter is REMANDED to the trial court for further consideration of an appropriate award of attorneys' fees consistent with this opinion.

Jurisdiction relinquished.

 

_____
P. KEVIN BROBSON, Judge